UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RONI GILADI,                        :

                  Plaintiff,    :    94 Civ. 3976 (RMB)(HBP)

    -against-                   :    REPORT AND
                                     RECOMMENDATION
BERISH STRAUCH, HARRIS STERMAN,    :
DEBRA IRIZARRY, MONTEFIORE MEDICAL
CENTER, "JOHN DOE" and          :
"RICHARD ROE", last two names
being fictitious, true names    :
being unknown,
                                :
                  Defendants.
                                :
----------------------------------X


          PITMAN, United States Magistrate Judge,


          TO THE HONORABLE RICHARD M. BERMAN, United States

District Judge,


I.  Introduction


          By notice of motion dated March 1, 2006, defendants

move for an order, pursuant to Rule 56 of the Federal Rules of

Civil Procedure, granting summary judgment and dismissing plain-

tiff's claims for medical malpractice, breach of contract, and

lack of informed consent, arguing, among other things, that

plaintiff is unable to sustain his burden of proof with respect

to the standard of care, proximate cause, and damages.  For the

reasons set forth below, I respectfully recommend that defen-

dants' motion should be granted in part and denied in part.

II.  Facts

A.  Relevant Substantive Facts

This is a medical malpractice action in which plaintiff alleges that defendants committed certain acts of malpractice during a December 1991 surgery on plaintiff's left arm.

On December 12, 1991, plaintiff underwent surgery on his left arm, allegedly performed by Berish Strauch, M.D., to correct compressions of the ulnar and median nerves at the wrist level and an entrapment of the ulnar nerve at the elbow level (Defendant Strauch's Operative Report, dated December 12, 1991 ("Dr. Strauch's Operative Report") at 2, annexed as Exhibit 1 to the Declaration of Philip Dinhofer, dated May 22, 2006 ("Dinhofer Decl.")).  The procedures allegedly performed during this surgery were (1) a transposition of the ulnar nerve at the elbow; (2) Guyon's Canal release; (3) median nerve decompression; (4) external neurolysis, and (5) application of a splint (Dr. Strauch's Operative Report at 2, annexed as Exhibit 1 to Dinhofer Decl.).[1]  Subsequent to the surgery, plaintiff experienced pain, numbness, loss of sensation, and tingling in his left arm (Deposition of Roni Giladi, taken on June 22, 1995 ("Giladi Dep., June

_____

[1]The parties' motion papers do not define the nature of these procedures.

22, 1995"[2]) at 207-09, annexed to Dinhofer Decl.).  Plaintiff
sought medical advice from other physicians as a result of the
pain, and ultimately consulted with Maurice Rousso, M.D., who is
plaintiff's putative expert and treating physician in this matter
(Giladi Dep., June 22, 1995 at 207-36, annexed to Dinhofer
Decl.).

     Dr. Rousso is an Israeli surgeon who has never prac-
ticed medicine in the United States (Plaintiff's Witness Informa-
tion, dated March 13, 1995, annexed as Exhibit A to the Affidavit
of Kenneth Burford ("Burford Aff."), dated March 2, 2006).
Plaintiff first saw Dr. Rousso for a "consultation" on May 23,
1993 to assess the condition of his left arm (Deposition of Dr.
Rousso, taken on April 17-18, 1997 ("Rousso Dep., April 17-18,
1997"[3]) at 242-43, 266, 271-73, annexed to Dinhofer Decl.).  Dr.
Rousso testified that he was confused at this visit by his
physical findings that plaintiff had not undergone an ulnar nerve
transposition and plaintiff's statements to the contrary (Rousso
Dep., April 17-18, 1997 at 271, annexed to Dinhofer Decl.).
Accordingly, Dr. Rousso requested that plaintiff return with all

---

[2]Mr. Giladi was deposed on June 22, 1995, March 6, 1996, and
April 22, 1996.  Citation to "Giladi Dep.," followed by a date
refers to the transcript of the deposition taken on the date
indicated.

[3]Dr. Rousso was deposed on April 17, 1997, April 18, 1997,
January 8, 2001, January 9, 2001, and January 10, 2001.  Citation
to "Rousso Dep.," followed by a date refers to the transcript of
the deposition taken on the date indicated.

of his medical documentation concerning his arm (Rousso Dep., April 17-18, 1997 at 271, annexed to Dinhofer Decl.).

Plaintiff returned with his medical documents on May 24, 1993 and informed Dr. Rousso that he was seeking a medical certificate for purposes of a lawsuit (Rousso Dep., April 17-18, 1997 at 267, 271-73, annexed to Dinhofer Decl.).  On May 25, 1993, Dr. Rousso provided plaintiff with a certificate summarizing his findings and opinions (Rousso Dep., April 17-18, 1997 at 272, annexed to Dinhofer Decl.).  In the certificate, Dr. Rousso noted, inter alia, that plaintiff reported that he consulted Dr. Strauch in 1991 for symptoms of "altered sensation" in his left hand, after which Dr. Strauch performed a "release of entrapment syndrome of the median nerve at [the] wrist level . . . and of the ulnar nerve at both the elbow and the wrist" (Certificate of Dr. Rousso, dated May 25, 1993, at 1, annexed as Exhibit B to Burford Aff.).  The certificate summarized the specifics of the procedure as detailed in Dr. Strauch's post-operative report (Certificate of Dr. Rousso, dated May 25, 1993, at 1, annexed as Exhibit B to Burford Aff.).  Dr. Rousso noted in the certificate that the post-operative report did not indicate either the presence or absence of fibrous tissue around or inside the ulnar nerve at the elbow or wrist level, but did report that the median nerve was released from fibrous tissue at the wrist level (Certificate of Dr. Rousso, dated May 25, 1993, at 1, annexed as

4

Exhibit B to Burford Aff.).  The certificate stated that the
post-operative period was notable for intense and prolonged pain,
swelling, and functional disability (Certificate of Dr. Rousso,
dated May 25, 1993, at 2, annexed as Exhibit B to Burford Aff.).
Dr. Rousso noted that, according to a verbal report by Dr.
Strauch, plaintiff's ulnar nerve was not in fact transposed
(Certificate of Dr. Rousso, dated May 25, 1993, at 2, annexed as
Exhibit B to Burford Aff.).  The certificate also summarized
plaintiff's complaints of "electric" sensation, weakness in the
hand and diminished sensation at the digits and noted that an
electrophysiological test in December 1992 showed reduced conduc-
tion of the ulnar nerve at the elbow level, as well as signs of
entrapment of the median nerve at both the left and right wrist
(Certificate of Dr. Rousso, dated May 25, 1993, at 2, annexed as
Exhibit B to Burford Aff.).

        Dr. Rousso's certificate then summarized the findings
of his physical examination of plaintiff.  Specifically, Dr.
Rousso wrote that at the left elbow, that there were clear signs
of neuroma[4] formation at a scar at the ulnar groove site and that
the ulnar nerve could be felt in its usual position and not
transposed anteriorly (Certificate of Dr. Rousso, dated May 25,
1993, at 2, annexed as Exhibit B to Burford Aff.).  Dr. Rousso

_____

        [4]A neuroma is "a tumor or new growth largely made up of
nerve cells and nerve fibers; a tumor growing from a nerve."
Dorland's Medical Dictionary 1129 (27th ed. 1988).

found weakness in motor function in the 4th and 5th digits of the left hand, moderate weakness of all intrinsic muscles innervated by the ulnar nerve, and partial decrease in skin sensation of the 4th and 5th digits of the left hand (Certificate of Dr. Rousso, dated May 25, 1993, at 2, annexed as Exhibit B to Burford Aff.).

Dr. Rousso's certificate then concluded that plaintiff's symptoms and signs were due in part to the poor result of the operation performed on December 12, 1991, and in part to the appearance of new symptoms and signs, such as neuroma and paresis[5] of the ulnar nerve, after new adhesions and entrapment of the nerve to the elbow scar, or after partial injury to the same nerve (Certificate of Dr. Rousso, dated May 25, 1993, at 3, annexed as Exhibit B to Burford Aff.).  The certificate also noted that all symptoms and signs would be permanent unless an attempt to repair the ulnar nerve at the elbow was made before the first anniversary of the surgery; complete recovery could not, however, be guaranteed (Certificate of Dr. Rousso, dated May 25, 1993, at 3, annexed as Exhibit B to Burford Aff.).  The certificate then stated that plaintiff had returned to work on March 9, 1992 and what plaintiff's temporary disability entitlements should be (Certificate of Dr. Rousso, dated May 25, 1993, at 3, annexed as Exhibit B to Burford Aff.).  Lastly, the

---

[5]A paresis is a "slight or incomplete paralysis." Dorland's Medical Dictionary 1231 (27th ed. 1988).

certificate noted that partial decrease of ulnar nerve sensory and motor function in the hand, and a painful elbow scar which interferes with upper arm function each were partially responsible (approximately 10% each) for plaintiff's disability, but that these percentages might change if further surgery were performed (Certificate of Dr. Rousso, dated May 25, 1993, at 3, annexed as Exhibit B to Burford Aff.).

Dr. Rousso authored another document for plaintiff on July 12, 1993, which he referred to as a "Complement" (Mr. Roni Giladi, Medical Certificate from date 25 May 1993, Complement and Answer to your Questions from date 8 June 1993, dated July 12, 1993 ("Dr. Rousso Complement dated July 12, 1993"), annexed as Exhibit A to Burford Aff.). In this document, Dr. Rousso noted that the diagnosis before Dr. Strauch's surgery was entrapment of the ulnar nerve at the left elbow and entrapment of the median nerve at the left wrist (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.). He wrote that this diagnosis was one of probability, and that sometimes each nerve may be compressed at more than one level, and that sometimes release at one site improves the whole syndrome (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.). Dr. Rousso opined that the "surgical program" performed by defendants should have been performed in two separate

"stages," consisting first of a neurolysis[6] of the ulnar nerve at the elbow level, and then after a "short period" to confirm the success of the first stage, a second "stage" to release the median nerve at the wrist level (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.).  If the first stage was unsatisfactory, a release of the ulnar nerve at the wrist level should have been added to the second stage (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.).  Dr. Rousso then reiterated his opinion that, for plaintiff, "the surgical treatment of both nerves at two different levels in one single stage was excessive and beyond what is reasonably expected" (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.).

Dr. Rousso also reiterated the discrepancy noted in his May 25, 1993 certificate between Dr. Strauch's post-operative report and the results of his physical examination concerning whether an ulnar nerve transposition was performed (Dr. Rousso Complement of July 12, 1993 at 1, annexed as Exhibit A to Burford Aff.).  Dr. Rousso clarified that the poor surgical result referred to in his certificate was the partial permanence of

---

[6]A neurolysis is:  (1) release of a nerve sheath by cutting it longitudinally; (2) the operative breaking up of perineural adhesions; (3) the relief of tension upon a nerve obtained by stretching; (4) exhaustion of nervous energy, or (5) destruction or dissolution of nerve tissue.  Dorland's Medical Dictionary 1129 (27th ed. 1988).

symptoms and signs after the release of the median and ulnar nerves (Dr. Rousso Complement of July 12, 1993 at 2, annexed as Exhibit A to Burford Aff.).  He endorsed a statement, from a letter apparently written by plaintiff's counsel, that adhesions and scar tissue are normal consequences of surgery due to fibrosis around the nerves and occur independent of the skill of the surgeon (Dr. Rousso Complement of July 12, 1993 at 2, annexed as Exhibit A to Burford Aff.).  He added that there were additional symptoms and signs, specifically, electric sensation, decreased sensation at digits 4 and 5, weakness of intrinsic muscles and two extrinsic muscles suggesting new injury to the nerve (Dr. Rousso Complement of July 12, 1993 at 2, annexed as Exhibit A to Burford Aff.).  Dr. Rousso specified that the additional surgery plaintiff required should include an ulnar nerve exploration using microsurgery, neurolysis, anastomosis[7] or any necessary treatment of injured nerve fascicles,[8] and treatment of neuroma if necessary (Dr. Rousso Complement of July 12, 1993 at 2, annexed as Exhibit A to Burford Aff.).

On January 20, 1994, Dr. Rousso issued another certificate in response to complaints by plaintiff that his July

---

[7]Anastomosis is an opening created by surgical, traumatic, or pathological means between two normally separate spaces or organs.  Dorland's Medical Dictionary 73 (27th ed. 1988).

[8]A fascicle is a small bundle or cluster, especially of nerve or muscle fibers.  Dorland's Medical Dictionary 613 (27th ed. 1988).

12, 1993 certificate was not sufficiently "categoric" concerning the presence of new injury and the need for another surgery in the future (Certificate of Dr. Rousso, dated January 20, 1994, annexed as Exhibit B to Burford Aff.). In this certificate, Dr. Rousso reiterated that: (1) surgical treatment of two nerves at two levels in one procedure was excessive and beyond what is "reasonably expected"; (2) there was a discrepancy between the December 1991 operative report which stated that an ulnar nerve transposition was performed and his own May 23, 1993 physical examination which showed the nerve in its normal anatomic site, and (3) there were additional symptoms and signs which suggest new injury to the nerve at the elbow (Certificate of Dr. Rousso, dated January 20, 1994, annexed as Exhibit B to Burford Aff.). Dr. Rousso also provided a shorter paragraph to be substituted for the paragraph of his July 12, 1993 Complement addressing the corrective surgery he believed was required, noting that it must include an ulnar nerve exploration, neurolysis and the repair of injured nerve fascicles (Certificate of Dr. Rousso, dated January 20, 1994, annexed as Exhibit B to Burford Aff.). Dr. Rousso also submitted another, undated letter to plaintiff, which appears to be identical in all respects to the January 20, 1994 Complement except that it omits the language indicating that it was prepared in response to plaintiff's complaint that his July 12, 1993 certificate is not sufficiently categoric (Undated Letter of Dr.

Rousso ("Undated Rousso Letter"), annexed as Exhibit B to Burford Aff.).

As noted above, Dr. Rousso suggested that plaintiff undergo a second operation to determine the cause of plaintiff's post-surgical complaints, as well as to remedy any damage found. Dr. Rousso performed this operation on April 11, 1994 (Dr. Rousso's Operative Report, dated April 11, 1994, annexed as Exhibit 2 to Dinhofer Decl.). During this surgery, Dr. Rousso found and excised a tumor, called a neuroma, growing out of severed nerve fibers, or fascicles (Rousso Dep., January 8, 2001 at 263-64, annexed to Dinhofer Decl.; Dr. Rousso's Operative Report, dated April 11, 1994, annexed as Exhibit 2 to Dinhofer Decl.; Dr. Rousso's Intra-Operative Photos, annexed as Exhibit 7 to Dinhofer Decl.). Dr. Rousso explained at his deposition that the fascicles had probably been severed by a partial cut to the nerve long before his own surgery (Rousso Dep., January 8, 2001 at 263-64, annexed to Dinhofer Decl.). Dr. Rousso also opined at his deposition that this cut to the nerve may have occurred during the 1991 surgery performed by defendants (Rousso Dep., January 9, 2001 at 194-97, annexed to Dinhofer Decl.; Rousso Dep., January 10, 2001 at 727-28, 731-32, 751, annexed to Dinhofer Decl.). Dr. Rousso also testified at his deposition that defendants breached the accepted standard of care by severing plaintiff's nerve fascicles, failing to repair the severed

fascicles, and failing to document the severing of the fascicles in the surgical report; he further opined that the first two departures caused plaintiff's neuroma and its sequelae (Rousso Dep., January 10, 2001 at 727-34, 749-54, annexed to Dinhofer Decl.)).

### B.   Relevant Procedural Facts

On April 16, 2001, I issued an Opinion and Order precluding plaintiff's experts, Dr. Rousso and E.C. Fulton, M.D., from testifying as experts within the meaning of Rule 26(a)(2) of the Federal Rules of Civil Procedure in this matter due to plaintiff's failure to comply with the disclosure requirements of Rule 26(a)(2).  Giladi v. Strauch, 94 Civ. 3976 (RMB)(HBP) (S.D.N.Y. Apr. 16, 2001), 2001 WL 388052.  I noted in my opinion, however, that Dr. Rousso may still testify to opinions that he formed while treating plaintiff.  Giladi v. Strauch, supra, 2001 WL 388052 at *6.

### III.  Analysis

### A.   Summary Judgment Standard

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no
> genuine issue of material fact and the moving party is
> entitled to judgment as a matter of law.  Fed.R.Civ.P.

> 56(c).  This form of relief is appropriate when, after
> discovery, the party -- here plaintiff -- against whom
> summary judgment is sought, has not shown that evidence
> of an essential element of [his] case -- one on which
> [he] has the burden of proof -- exists.  See Celotex
> Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
> L.Ed.2d 265 (1986).  This form of remedy is
> inappropriate when the issue to be resolved is both
> genuine and related to a disputed material fact.  An
> alleged factual dispute regarding immaterial or minor
> facts between the parties will not defeat an otherwise
> properly supported motion for summary judgment.  See
> Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir.
> 1990).  Moreover, the existence of a mere scintilla of
> evidence in support of nonmovant's position is
> insufficient to defeat the motion; there must be
> evidence on which a jury could reasonably find for the
> nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S.
> 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine
> issue of material fact, a limited burden of production
> shifts to the nonmovant, who must "demonstrate more
> than some metaphysical doubt as to the material facts,"
> and come forward with "specific facts showing that
> there is a genuine issue for trial."  Aslanidis v.
> United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.
> 1993).  If the nonmovant fails to meet this burden,
> summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54

(2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22

F.3d 1219, 1223-24 (2d Cir. 1994).  "The party seeking summary

judgment has the burden to demonstrate that no genuine issue of

material fact exists. . . .  In determining whether a genuine

issue of material fact exists, a court must examine the evidence

in the light most favorable to, and draw all inferences in favor

of, the non-movant . . . .  Stated more succinctly, '[t]he

13

evidence of the non-movant is to be believed.'" <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted). <u>See also Jeffreys v. City of New York</u>, <u>supra</u>, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."); <u>accord Make the Road by Walking, Inc. v. Turner</u>, 378 F.3d 133, 142 (2d Cir. 2004); <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

The Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>see also Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003).



B.    Requisite Elements of a Medical
      Malpractice Claim Under New York State Law

Because the Court's jurisdiction in this matter is predicated on diversity of citizenship, New York substantive law governs this action. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64

(1938). "It is well settled under New York law that 'the requisite elements of proof in a medical malpractice case are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was the proximate cause of injury or damage.'" <u>Berk v. St. Vincent's Hosp. & Med. Ctr.</u>, 380 F. Supp.2d 334, 342 (S.D.N.Y. 2005), <u>quoting</u> <u>Amsler v. Verrilli</u>, 119 A.D.2d 786, 786, 501 N.Y.S.2d 411, 412 (2nd Dep't 1986).

In order to establish the first element, plaintiff must show "what the accepted standards of practice were and that the defendant deviated from those standards . . . ." <u>Sitts v. United States</u>, 811 F.2d 736, 739-40 (2d Cir. 1987), <u>citing</u> <u>Toth v. Cmty. Hosp.</u>, 22 N.Y.2d 255, 262-63, 239 N.E.2d 368, 372, 292 N.Y.S.2d 440, 447 (1968); <u>Monahan v. Weichert</u>, 82 A.D.2d 102, 105-06, 442 N.Y.S.2d 295, 297 (4th Dep't 1981). "Expert testimony is normally required to establish the applicable standard of practice and, in an appropriate case, to determine whether an alleged deviation from that standard was the proximate cause of a plaintiff's injuries[,]" <u>Berk v. St. Vincent's Hosp. & Med. Ctr.</u>, <u>supra</u>, 380 F. Supp.2d at 342, "unless the alleged act of malpractice falls within the competence of a lay jury to evaluate." <u>Keane v. Sloan-Kettering Inst. for Cancer Research</u>, 96 A.D.2d 505, 506, 464 N.Y.S.2d 548, 549 (2nd Dep't 1983) <u>quoted in</u> <u>Sitts v. United States</u>, <u>supra</u>, 811 F.2d at 739. Moreover, "even where it might initially appear that the matter would be

15

within the trier's ordinary competence, . . . if the defendant can proffer any evidence to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." Sitts v. United States, supra, 811 F.2d at 740, citing Benson v. Dean, 232 N.Y. 52, 57-58, 133 N.E. 125, 127 (1921).

C.   The Parties' Arguments

With respect to plaintiff's medical malpractice claim, defendants first argue that because Dr. Rousso has been precluded from testifying as an expert, plaintiff has no evidence to establish a departure from the appropriate standard of care, proximate cause, and damages and cannot, therefore, sustain his burden of proof concerning these issues (Defendant's Memorandum in Support of Motion, dated March 2, 2006 ("Def.'s Summary Judgment Motion"), at 7).  Second, defendants assert that plaintiff's expert, Dr. Rousso, should be precluded from testifying because plaintiff is attempting to evade my prior ruling and is offering Dr. Rousso as a Rule 26(a)(2) expert and not as a treating physician (Def.'s Summary Judgment Motion at 10-14).  Third, defendants argue that Dr. Rousso should be precluded from testifying in any capacity because his testimony is unreliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (Def.'s Summary Judgment Motion at 14-18).

Lastly, defendants assert that they are entitled to summary judgment because their expert, Dr. Grad, has opined that they did not depart from accepted medical practice, and that plaintiff's complaints are attributable to plaintiff's healing process, improper post-operative activities, and subsequent injury to the affected area (Def.'s Summary Judgment Motion at 9-10).

In addition to joining in the foregoing arguments, defendant Harris Sterman, M.D. asserts that he is entitled to summary judgment because (1) he submitted an affidavit attesting to the appropriateness of his care in this matter and (2) plaintiff cannot offer evidence to the contrary because plaintiff's expert, Dr. Rousso, did not specifically mention him in his reports (Def.'s Summary Judgment Motion at 7-9).

Similarly, in addition to joining in the foregoing arguments, defendant Debra Irizarry, M.D. asserts that she is entitled to summary judgment because she submitted an affidavit stating that she did not deviate from the appropriate standard of care and plaintiff cannot offer evidence that she did breach the standard of care or that her care was the proximate cause of injury to plaintiff because Dr. Rousso also failed to mention her by name in his reports (Def.'s Summary Judgment Motion at 7-9). Dr. Irizarry further claims she is entitled to summary judgment because she did not perform the "actual cutting" during plaintiff's surgery (Def.'s Summary Judgment Motion at 7-8).

With respect to plaintiff's breach-of-contract claim, defendants argue that this claim is merely redundant of plaintiff's malpractice claim and should, therefore, be dismissed.

With respect to plaintiff's lack-of-informed-consent claim, all defendants argue that plaintiff's complaint fails to comply with New York Public Health Law Section 2805(d)(3), by failing to allege that a "reasonably prudent person in the patient's position would not have undergone the treatment . . . if he had been fully informed and that the lack of informed consent is a proximate cause of the injury . . . for which recovery is sought." Second, defendants argue that because (1) plaintiff's expert Dr. Rousso has been precluded from testifying as a Rule 26(a)(2) expert, and (2) a treating physician would not form an opinion as to the presence or absence of informed consent in the course of his or her treatment, plaintiff is unable to comply with New York Civil Practice Law and Rules section 4401(a-), which requires that expert testimony be adduced in connection with any claim based solely on lack of informed consent. Defendants Drs. Sterman and Irizarry further argue that because they were residents at the time of plaintiff's surgery, they were not the persons providing the professional treatment and, thus,

had no obligation to obtain plaintiff's informed consent.[9]

        In response, plaintiff asserts that issues of fact preclude the granting of summary judgment here.  Although he does not specifically address each of defendants' arguments, plaintiff essentially maintains that he does have evidence to establish a departure from the appropriate standard of care, proximate cause, and damages, in the form of the testimony of his treating physician, Dr. Rousso, based on the conclusions Dr. Rousso reached during the course of treatment (Plaintiff's Memorandum in Opposition ("Pl.'s Memorandum in Opposition") at 14, 21-26).  Plaintiff argues that Dr. Rousso is his treating physician, and that he is offering the testimony of Dr. Rousso as treating physician and not as a Rule 26(a)(2) expert (Pl.'s Memorandum in Opposition at 14, 21, 27-29).  Plaintiff also maintains that Dr. Rousso's testimony should not precluded under <u>Daubert</u> because Dr. Rousso is a qualified physician whose opinions are based on findings he made during the surgery he performed on plaintiff (Pl.'s Memorandum in Opposition at 30).  Plaintiff further argues that any issues regarding the credibility of Dr. Rousso or his

---

        [9]New York Public Health Law section 2805(d)(1) defines lack of informed consent as:  "the failure of <u>the person providing professional treatment</u> . . . to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical . . . practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation."  N.Y. Pub. Health L. § 2805(d)(1) (emphasis added).

reports should be left to the jury to resolve (Pl.'s Memorandum in Opposition at 27-30). Plaintiff contends that the testimony of defendants' expert Dr. Grad is unreliable and should be rejected under Daubert, and that Dr. Grad should not be permitted to testify because his Rule 26(a)(2) disclosures do not adequately set forth the basis for his opinions (Pl.'s Memorandum in Opposition at 14-21). Plaintiff also argues and that summary judgment is not appropriate because a jury could infer negligence on the part of defendants here under the doctrine of res ipsa loquitur (Pl.'s Memorandum in Opposition at 26).

Plaintiff also maintains that there are issues of material fact concerning which of the three defendant doctors performed the "actual cutting" that plaintiff claims caused his injury (Pl.'s Memorandum in Opposition at 6). Plaintiff asserts that inconsistencies between the testimony and operative and post-operative reports of Drs. Sterman and Strauch raise material issues of fact as to which of these defendants performed the "actual cutting" and whether an ulnar nerve transposition was actually performed on plaintiff (Pl.'s Memorandum in Opposition at 9-14). Plaintiff also contends that inconsistencies between the testimony of Drs. Irizarry and Sterman with respect to Dr. Irizarry's responsibility to keep a list of the specific surgical procedures performed could allow a jury to conclude that Dr. Irizzary lied about this subject, and, therefore, that she also

lied about other aspects of her testimony, including, her denial of having performed the actual cutting upon plaintiff (Pl.'s Memorandum in Opposition at 7-11).

With respect to his breach-of-contract claim, plaintiff argues that this claim is not merely redundant of his medical malpractice claim, but rather predicated upon special promises made by Dr. Strauch to "tak[e] care of problems [plaintiff] never knew he had" and that plaintiff "would be pain free post operatively" (Pl.'s Memorandum in Opposition at 32).

Lastly, plaintiff argues that he has properly stated a claim for lack of informed consent because he can assert in his motion papers that he would not have undergone the treatment had he been fully informed and that lack of informed consent was the proximate cause of his injury (Pl.'s Memorandum in Opposition at 30-32). He further argues there is credible evidence upon which a jury could conclude that (1) Dr. Strauch promised that he would perform the operation himself and that no residents would operate on plaintiff, (2) residents performed the operation on plaintiff, (3) plaintiff would not have undergone the surgery, and been injured, had he known residents would be performing it (Pl.'s Memorandum in Opposition at 30-32). Finally, plaintiff argues that New York Civil Practice Law and Rules Section 4401(a) requires expert testimony only for actions based solely upon lack of informed consent, and is therefore inapplicable here because

his claim is not solely so based, and further, that expert testimony is not required because lack of informed consent is not beyond the knowledge of a lay juror (Pl.'s Memorandum in Opposition at 30-32).  Plaintiff does not address the arguments of Dr. Irizarry and Dr. Sterman regarding lack of informed consent.

D.    <u>Plaintiff's Medical Malpractice Claim</u>

1.    Motion For Summary Judgment
      <u>As To All Defendants</u>

Defendants' first argue that plaintiff cannot sustain his burden of proof with respect to all defendants due to the preclusion of his expert witness, Dr. Rousso, by my April 16, 2001 Order.

a.    Dr. Rousso's Status As a
      <u>Treating Physician</u>

Although my April 16, 2001 Order precluded Dr. Rousso from testifying as an expert witness within the meaning of Federal Rules of Civil Procedure Rule 26(a)(2), it does not follow that he is precluded from offering all expert opinion.  My April 16, 2001 Order was based on plaintiff's failure to make the disclosures required by Fed.R.Civ.P. 26(a)(2) in a timely manner. <u>See</u> <u>Giladi v. Strauch</u>, <u>supra</u>, 2001 WL 388052 at *6.  However, to the extent Dr. Rousso will offer testimony concerning opinions

formed by him in the course of treating plaintiff, Rule 26(a)(2) does not require any disclosures.[10]  Thus, plaintiff's failure to comply with Rule 26(a)(2) does not preclude Dr. Rousso from offering testimony concerning opinions formed in the course of treating plaintiff.  See Zanowic v. Ashcroft, 97 Civ. 5292 (JGK)(HBP), 2002 WL 373229 at *2 (S.D.N.Y. Mar. 8, 2002) ("There can be no dispute that . . . a treating physician [is] free to testify to opinions he formed in the course of treating [plaintiff], without regard to the disclosure requirements of Rule 26(a)(2), Fed.R.Civ.P."), citing Brundidge v. City of Buffalo, 79 F. Supp.2d 219, 224 (W.D.N.Y. 1999); Thompkins v. Santos, 98 Civ. 4634 (MBM)(HBP), 1999 WL 1043966 at *8 n. 5

---

[10]The Advisory Committee Notes to the 1993 Amendments to the Federal Rules of Civil Procedure provide, in pertinent part:

> For convenience, [Rule 26(a)(2)] continue[s] to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.  The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony . . . .  A treating physician, for example, can be deposed or called to testify at trial without any requirement for [sic] a written report.

Advisory Committee Notes to the 1993 Amendments to the Federal Rules of Civil Procedure, reprinted at 146 F.R.D. 401, 635 (1993).

(S.D.N.Y. Nov. 16, 1999); Mangla v. Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996) ("Treating physicians . . . testifying to their personal consultation with a patient are not considered expert witnesses"); Salas v. United States, 165 F.R.D. 31, 32 (W.D.N.Y. 1995) (doctors' "opinions with respect to the injuries or illnesses sustained as they causally relate to [the] incident and his/her opinion as to permanency" were not subject to expert witness disclosure); Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D. Colo. 1995) (treating physicians may have "opinion[s] as to the cause of injury . . . or degree of injury in the future," but "[s]uch opinions do not make the treating physicians experts"); see also Shapardon v. West Beach Estates, 172 F.R.D. 415, 416-17 (D. Haw. 1997).  Thus, because he is a treating physician, Dr. Rousso is precluded only from testifying to opinions unrelated to his treatment of plaintiff.  See Giladi v. Strauch, supra, 2001 WL 388052 at *6; see also Shapardon v. West Beach Estates, supra, 172 F.R.D. at 417; Brown v. Best Foods, A Div. of CPC Int'l, Inc., 169 F.R.D. 385, 389 (N.D. Ala. 1996); Salas v. United States, supra, 165 F.R.D. at 33.

Regardless of Dr. Rousso's status at the time of his initial consultation with plaintiff and the preparation of his initial certificates for plaintiff, Dr. Rousso was clearly functioning as a treating physician at the time he performed the exploratory and corrective surgery on plaintiff on April 11,

24

1994. Accordingly, Dr. Rousso is a treating physician with respect to that surgery, and may testify to opinions formed in preparation for and during the course of that surgery with respect to diagnosis and causation of plaintiff's condition. <u>See</u> <u>Zanowic v. Ashcroft</u>, <u>supra</u>, 2002 WL 373229 at *3 ("treating physician . . . can express an opinion as to 'the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of the disability, if any, caused by the injury.'") <u>quoting</u> <u>Shapardon v. West Beach Estates</u>, <u>supra</u>, 172 F.R.D. at 416-17.

     b.  Dr. Rousso's Testimony
        <u>on the Standard of Care</u>

     Defendants argue that Dr. Rousso may not testify with regard to general standards of care because this is classic expert testimony which Dr. Rousso is precluded from providing as a treating physician. Again, defendants misapprehend the meaning of my April 16, 2001 Order. Because plaintiff had failed to comply with the disclosure requirement of Rule 26(a)(2), my April 16, 2001 Order precluded plaintiff from offering the opinions Rousseau formed as an expert specially retained for the purposes of litigation. However, to the extent he had formed opinions as a treating physician and not as an expert retained for litigation, Rule 26(a)(2) imposed no disclosure obligation and, therefore, plaintiff's failure to comply with Rule 26(a)(2) does

not result in the exclusion of such opinions.

Harms v. Lab. Corp. of America, 155 F. Supp.2d 891
(N.D. Ill. 2001) is instructive in this regard.  In that case,
plaintiff sought to preclude defendant's laboratory manager from
testifying to the standard of care applicable to a laboratory
that performed certain types of pre-natal blood tests.  Plaintiff
based her motion on several theories, including defendant's
failure to make appropriate Rule 26(a)(2) disclosures concerning
the laboratory manager.  Although the court did ultimately
preclude the manager from testifying on other grounds, it denied
plaintiff's motion to the extent that it was based on Rule
26(a)(2) and concluded that defendant's failure to comply with
Rule 26(a)(2) did not preclude the laboratory manager from
testifying to expert opinions regarding matters within the normal
scope of his employment duties.  Harms v. Lab. Corp. of America,
supra, 155 F. Supp.2d at 902-03.

To the extent that Dr. Rousso's opinions on the
standard of care are based on his personal knowledge and were
formed during his preparation for and rendering of a surgical
procedure on the plaintiff (Pl.'s Memorandum in Opposition at 6,
22-26), Dr. Rousso may testify with respect to these opinions as
a treating physician.  See e.g. Croom v. W. Conn. State Univ.,
3:00 CV 1805 (PCD), 2002 WL 32503668 at *3 n.1 (D. Conn. Apr. 3,
2002) ("Provided the substance of her testimony is confined to

26

matters within her personal knowledge, plaintiff's treating physician most likely would not be considered an expert witness triggering the Fed.R.Civ.P. 26 disclosure requirements."), citing Patel v. Gayes, 984 F.2d 214, 217 (7th Cir. 1993).[11]

        c.  Reliability of
            Dr. Rousso's Testimony

Defendant's next argue that Dr. Rousso's testimony is unreliable and should be precluded in all respects under Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, 509 U.S. 579.

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Daubert established that the trial court has a gatekeeping duty under Rule 702 to ensure that expert testimony

---

[11]Because my finding that some of Dr. Rousso's opinion testimony was arrived at during the course of treatment is sufficient for purposes of deciding this motion, I do not decide whether all of Dr. Rousso's proffered opinion testimony was arrived at during the course of treatment. That is an issue to be resolved at trial, after appropriate voir dire questioning. My decision is, thus, without prejudice to any future motions to limit the scope of Dr. Rousso's testimony with respect to opinions that either may not have been formed during the course of treatment or that may have been formed in anticipation of litigation.

admitted under Fed.R.Evid. 702 is "both relevant and reliable."
See Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 589.
"[T]he Supreme Court clarified [in Kumho Tire Co. v. Carmichael,
526 U.S. 137, 152 (1999)] that, whether a witness's area of
expertise was technical, scientific, or more generally
'experience-based,'" the district court was required to "fulfill
the 'gatekeeping' function of 'mak[ing] certain that an expert,
whether basing testimony upon professional studies or personal
experience, employs in the courtroom the same level of
intellectual rigor that characterizes the practice of an expert
in the relevant field.'" Nimely v. City of New York, 414 F.3d
381, 396 (2d Cir. 2005), quoting Kumho Tire Co. v. Carmichael,
supra, 526 U.S. at 152.

Performance of the gatekeeping function requires a
trial court to conduct "a preliminary assessment of whether the
reasoning or methodology underlying the testimony is
scientifically valid and of whether that reasoning or methodology
properly can be applied to the facts in issue." See Daubert v.
Merrell Dow Pharm., Inc., supra, 509 U.S. at 589 (1993). Factors
that trial courts may consider in evaluating the reliability of
expert testimony include: "whether a theory or technique has
been and could be tested, whether it had been subjected to peer
review, what its error rate was, and whether scientific standards
existed to govern the theory or technique's application or

28

operation." Nimely v. City of New York, supra, 414 F.3d at 396,
quoting Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at
593-94.  "[W]hen an expert opinion is based on data, a
methodology, or studies that are simply inadequate to support the
conclusions reached, Daubert and Rule 702 mandate the exclusion
of that unreliable opinion testimony." Amorgianos v. Nat'l R.R.
Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

        Defendants argue that Dr. Rousso lacks the requisite
"knowledge, skill, experience, training, or education" to qualify
as an expert witness under Fed.R.Evid. 702.  While "[i]n general,
this qualification requirement has been interpreted liberally,"
it is, however, "not a nullity." Mancuso v. Consol. Edison Co.,
967 F. Supp. 1437, 1442 (S.D.N.Y. 1997), comparing McCullock v.
H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) (allowing
otolaryngologist to testify that a throat problem was caused by
exposure to glue fumes; dismissing defendant's argument that
witness was unqualified because he was not an environmental
medicine expert), and In re Paoli R.R. Yard PCB Litig., 35 F.3d
717, 741 (3d Cir. 1994) (holding that "exclusion is improper
simply because an expert does not have the appropriate degree or
training"), with Diaz v. Johnson Matthey, Inc., 893 F.Supp. 358,
372-73 (D.N.J. 1995) (disqualifying pulmonologist from testifying
that plaintiff suffered from platinum allergy because witness was
neither an epidemiologist nor a toxicologist, and had "no other

29

qualifications other than his medical education and his years practicing as a pulmonologist"), and Wade-Greaux v. Whitehall Labs., Inc., 874 F. Supp. 1441, 1476 (D. V.I. 1994) (finding witness educated as a pediatrician, pharmacologist, and toxicologist unqualified to testify regarding cause of birth defects because he had merely reviewed selected literature on the subject for the purposes of litigation).

        I conclude that Dr. Rousso is qualified to testify as an expert in this matter.  Dr. Rousso has extensive experience as a practicing physician in the specialty of upper extremity surgery.  Dr. Rousso's curriculum vitae and deposition testimony indicate that he has been practicing medicine for over forty years, performed numerous surgeries of the type in issue, has served as the Head of the Hand Surgery Department at Misgav Ladach General Hospital and of the Day Care Surgery Department at Hadassah-Hebrew University Hospital, both in Jerusalem, Israel, has published numerous articles related neurology of the upper extremities, and has lectured at multiple medical symposia (Curriculum Vitae of Dr. Rousso, annexed as Exhibit A to Burford Aff.; Rousso Dep., April 17, 1997 at 74-75).  Based on these facts, Dr. Rousso possesses sufficient credentials and experience to testify as an expert under Fed.R.Evid. 702 with respect to opinions arrived at in preparation for, and during the course of, his treatment of plaintiff.  See, e.g. McCullock v. H.B. Fuller

Co., supra, 61 F.3d at 1043 (otolaryngologist qualified as expert to testify to throat ailment by virtue of his certification by the American Board of Otolaryngology and thirty years of specialization in diseases of the ears, nose and throat); Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1125 (9th Cir. 1994) (holding that the district court properly admitted expert testimony under Daubert that was based on, inter alia, the doctors' clinical experience and review of the medical records); Carroll v. Morgan, 17 F.3d 787, 790 (5th Cir. 1994) (doctor qualified to give expert opinion on standard of medical care based on thirty years of experience as a practicing, board-certified cardiologist and his review of the medical records).  Defendants' efforts to impugn Dr. Rousso's qualifications based on the facts that he attended medical school outside of the United States, is not licensed to practice medicine in the United States, and is unfamiliar with English legal and medical terminology are unpersuasive in light of Dr. Rousso's above-mentioned extensive credentials.  I find that these arguments go to the weight of his testimony, not its admissibility.

          I also find no basis for precluding Dr. Rousso's opinion testimony as the product of unreliable methodology.  Dr. Rousso based his opinions on a range of factors, including his findings during the surgery, his pre- and post-operative care and treatment of plaintiff, plaintiff's medical history (both as

described by plaintiff and as set forth in plaintiff's medical
and surgical reports), his training and experience, and his
subsequent research related to his findings during the surgery.
The reasoning and methodology underlying Dr. Rousso's testimony,
thus, appears to be scientifically valid.  I am unable to find
that Dr. Rousso's opinions here are "based on data, a
methodology, or studies that are simply inadequate to support the
conclusions reached," Amorgianos v. Nat'l R.R. Passenger Corp.,
supra, 303 F.3d at 266, warranting exclusion on grounds of
unreliability under Daubert and Fed.R.Evid. 702.

        Defendants also argue that Dr. Rousso's opinions are
unreliable because he altered his medical records at the request
of plaintiff.  Although they do not cite specific portions of
particular records, defendants appear to be referring to the
differences among Dr. Rousso's May 25, 1993 Certificate, his July
12, 1993 Complement, his January 20, 1994 Certificate, and the
Undated Rousso Letter.  A review of the record of this case and
these documents in particular, however, reveals that these
alterations appear to have been made predominantly for
clarification purposes and merely repeated the same opinions with
greater specificity.  Dr. Rousso omitted from the Undated Rousso
Letter the statement contained in his January 20, 1994
Certificate noting that the Certificate had been prepared in
response to plaintiff's complaint that his July 12, 1993

Complement was not categoric enough.  However, because the letter
is not dated, it is not clear whether it preceded the January 20,
1994 Certificate and it is not clear whether Dr. Rousso deleted
information from the later document or supplemented it with
additional information.  Thus, defendants have not demonstrated
that there have been any substantive alterations to Dr. Rousso's
records.

Thus, I find that Dr. Rousso's opinions are
sufficiently reliable to be admissible and should not be
precluded based on his allegedly inconsistent statements.
Defendants' arguments concerning the veracity of Dr. Rousso's
testimony based on his record keeping practices, as well as on
the strength of his credentials, go to the weight, not the
admissibility, of his testimony.  See Daubert v. Merrell Dow
Pharm., Inc., supra, 509 U.S. at 596 (1993) ("Vigorous cross-
examination, presentation of contrary evidence, and careful
instruction on the burden of proof are the traditional and
appropriate means of attacking shaky but admissible evidence.").

In sum, I find that Dr. Rousso's opinions formed during
the course of treating plaintiff, including such opinions that
pertain to the standard of care, are admissible in this matter.
Viewed in the light most favorable to the plaintiff, and drawing
all reasonable inferences in plaintiff's favor, I find that this
opinion testimony of Dr. Rousso is sufficient to give rise to a

genuine issue of fact concerning the existence of the malpractice alleged, causation, and damage.  Accordingly, summary judgment is inappropriate for any of the defendants on the theory that plaintiff is unable to meet his burden of proof due to the partial preclusion of Dr. Rousso's testimony.

      2.  Motion for Summary
          <u>Judgment As to Dr. Sterman</u>

Dr. Sterman argues that he is also entitled to summary judgment because he submitted an affidavit stating that he did not breach the appropriate standard of care and that plaintiff cannot offer evidence to the contrary because Dr. Rousso does not mention him in his report.

Dr. Sterman has satisfied his initial burden of demonstrating that there is no genuine issue of material fact for trial by citing to evidence in the record which supports his motion, specifically, his affidavit stating that he did not depart from the appropriate standard of care (Affidavit of Harris Sterman, sworn to on March 6, 2006, at 2, annexed to Burford Aff.).  Nonetheless, Dr. Sterman is not entitled to summary judgment because plaintiff has effectively rebutted this initial showing with specific facts demonstrating the existence of a genuine issue for trial.

To defeat summary judgment with respect to Dr. Sterman, plaintiff must show, among other things, that Dr. Sterman

34

provided medical care to him and that Dr. Sterman failed to exercise the appropriate standard of care.  The record demonstrates that Dr. Sterman participated in plaintiff's surgery (Deposition of Dr. Sterman, taken on January 22, 1997, at 15, 48; Deposition of Dr. Strauch, taken on July 19, 1996, at 160. Transcripts of both depositions are annexed to the Dinhofer Decl.), and Dr. Rousso's testimony, if credited, would establish that the surgeons who operated failed to exercise the appropriate standard of care (Rousso Dep., taken on January 10, 2001, at 727-34, 749-54, annexed to Dinhofer Decl.).  There is no requirement that the evidence establishing this element of plaintiff's claim come from a single source, and, therefore, the fact that Dr. Rousso does not mention Dr. Sterman by name is immaterial.

Accordingly, I find that there is a genuine issue for trial with respect to the material facts of whether Dr. Sterman actively participated in performing the procedure on plaintiff and whether he deviated from the standard of care in the process, thereby causing injury.  Summary judgment is therefore inappropriate with respect to Dr. Sterman.

### 3.  Motion for Summary Judgment As to Dr. Irizarry

Dr. Irizarry argues that she is entitled to summary judgment because she did not perform the "actual cutting" during plaintiff's surgery.  She has also submitted an affidavit stating

that she has not breached the standard of care in this matter,
and argues that plaintiff has no evidence to the contrary
(Affidavit of Debra Irizarry, sworn to on March 1, 2006, at 1-2,
annexed to Burford Aff.; Def.'s Summary Judgment Motion at 8).
Specifically, Dr. Irizarry testified in her deposition that she
did not perform the actual surgical procedure on plaintiff
because it would have inappropriate for her to do so given her
status as a junior resident (Deposition of Dr. Irizarry, taken
October 8, 1996, at 58, annexed as exhibit 13 to Burford Aff.).
Since Dr. Irizarry has offered admissible evidence that she did
not cause plaintiff's alleged injury, a limited burden of
production now shifts to plaintiff to come forward with "specific
facts showing that there is a genuine issue for trial."
Aslanidis v. United States Lines, Inc., supra, 7 F.3d at 1072.

        Plaintiff has not met this limited burden.  In response
to Dr. Irizarry's motion, plaintiff points to inconsistencies
between the testimony of Dr. Irizarry and Dr. Sterman concerning
Dr. Irizzary's obligation to keep surgical records, arguing that
a jury could conclude from this that Dr. Irizarry lied about her
record-keeping responsibilities, and, therefore, that she may be
lying about not performing the actual cutting and not deviating
from the standard of care.  Such assertions will simply not
suffice because they merely impugn the credibility of Dr. Irizar-
ry but do not constitute affirmative evidence on which a jury

could find liability.  "Disbelief of a [summary judgment] movant-'s denial of a fact which the non-movant has the burden of proving is not sufficient to sustain that burden." Wantanabe Realty Corp. v. City of New York, 315 F. Supp.2d 375, 394 n.10 (S.D.N.Y. 2003); see e.g. Goldhirsh Group Inc., v. Alpert, 107 F.3d 105, 108-10 (2d Cir. 1997) (disbelief of a witness' testimony is insufficient to support a verdict in the absence of other affirmative evidence); United States v. Marchand, 564 F.2d 983, 986 (2d Cir. 1977) (while a jury is free to assume the truth of what a witness denies, a court cannot allow a civil action to go to the jury on that basis alone) citing Dyer v. MacDougall, 201 F.2d 265, 268-69 (2d Cir. 1952).  Plaintiff does not cite any specific factual evidence contradicting Dr. Irizarry's evidence that she did nothing more than observe the surgery in issue, and offers no affirmative evidence to support his claim against Dr. Irizarry.  This "evidence" cannot sustain plaintiff's burden of proof at trial that Dr. Irizarry participated in the surgery.  A reasonable jury could not conclude that Dr. Irizarry performed the actual cutting on plaintiff based solely on inconsistencies in her testimony regarding collateral issues.  Accordingly, summary judgment should be granted with respect to Dr. Irizarry.[12]

---

[12]Although Dr. Irizarry also argues that plaintiff cannot establish that she departed from accepted medical practice, the substance of her argument, that she did not perform the actual

(continued...)

E.   <u>Plaintiff's Breach-of-Contract Claim</u>

Defendant's argue that this claim is merely redundant of plaintiff's malpractice claim and should, therefore, be dismissed.

"A cause of action for breach of contract will not be sustained where 'it is merely a redundant pleading of plaintiff's malpractice claim in another guise, an attempt to plead as a contract action one which is essentially a malpractice action.'" <u>Abbondandolo v. Hitzig</u>, 282 A.D.2d 224, 225, 724 N.Y.S.2d 26, 27 (1st Dep't 2001), <u>quoting</u> <u>Monroe v. Long Island Coll. Hosp.</u>, 84 A.D.2d 576, 576, 443 N.Y.S.2d 433, 434 (2nd Dep't 1981).  "[A] breach of contract claim arising out of the rendition of medical services by a physician will withstand a test to its legal sufficiency only where it is based upon an express special promise to effect a cure or to accomplish some definite result." <u>Monroe v. Long Island Coll. Hosp.</u>, <u>supra</u>, 84 A.D.2d at 576, 443 N.Y.S.2d at 434; <u>see</u> <u>also</u> <u>Holton v. Sprain Brook Manor Nursing Home</u>, 253 A.D.2d 852, 852-53, 678 N.Y.S.2d 503, 503 (2nd Dep't 1998); <u>Nicoleau v. Brookhaven Mem'l Hosp. Ctr.</u>, 201 A.D.2d 544,

---

[12](...continued)
cutting on plaintiff, goes to causation and not to the appropriate standard of care.  I therefore limit my analysis of Dr. Irizarry's motion to the issue of causation, because Dr. Irizarry's argument that she did not deviate from the appropriate standard of care is moot if she did not perform the actual cutting on plaintiff.

545, 607 N.Y.S.2d 703, 704 (2nd Dep't 1994); <u>Assicurazioni</u>
<u>Generali, SpA v. Terranova</u>, No. 83 Civ. 1490 (JFK), 1984 WL 1191
at *6 (S.D.N.Y. Oct. 25, 1984).

      Here, plaintiff has not cited any evidence suggesting
that defendants made any express special promises to effect a
cure or to accomplish some definite result.  Plaintiff merely
alleges that Dr. Strauch, in counseling plaintiff on the
procedure, represented to him that the procedure would be not be
painful and would involve a three week recovery period.  Without
more, these allegations are insufficient to support plaintiff's
contention that an express promise was made.  Accordingly,
summary judgment should be granted dismissing plaintiff's breach-
of-contract claim because it is redundant of plaintiff's medical
malpractice claim.

    F.  <u>Plaintiff's Lack-of-Informed-Consent Claim</u>

      Defendants next argue that plaintiff's lack-of-
informed-consent claim fails to comply with New York Public
Health Law Section 2805(d)(3), which requires a plaintiff to
establish that a "reasonably prudent person in the patient's
position would not have undergone the treatment . . . if he had
been fully informed and that the lack of informed consent is a
proximate cause of the injury . . . for which recovery is sought-
."

Plaintiff's complaint alleges in pertinent part that "defendants failed to fully advise or inform the plaintiff of the dangers in the surgical treatment by the defendants to the plaintiff . . . and that the defendants failed to receive their [sic] informed consent thereto" (Complaint at ¶ 33).  Nowhere in the complaint does plaintiff allege that a reasonably prudent person in his position would not have undergone the treatment had he been fully informed.  Plaintiff similarly fails to make this requisite allegation in his memorandum in opposition to summary judgment or his deposition testimony.  Because Plaintiff has failed to allege, let alone offer evidence to establish that a reasonably prudent person in his position would not have undergone this procedure had he been fully informed, plaintiff has failed to state his claim properly and has failed to offer evidence sufficient to give rise to a genuine issue of fact as to an essential element of his case on which he bears the burden of proof.  Accordingly, there is no genuine issue of material fact with respect to this claim, and summary judgment should be granted.[13]

Summary judgment is also appropriate with respect to defendants' argument based on New York Civil Practice Law and

_____

[13]Since summary judgment of plaintiff's lack-of-informed-consent claim is appropriate with respect to all defendants under N.Y. Pub. Health L. § 2805, I need not address the argument of Dr. Sterman and Dr. Irizarry that they did not have an obligation under N.Y. Pub. Health L. § 2805 to obtain informed consent because they were not providing the professional treatment.

Rules Section 4401-a, which requires that expert testimony be adduced in connection with any claim based solely on lack of informed consent.  Defendants argue, persuasively, that because plaintiff's expert Dr. Rousso has been precluded from testifying as a Rule 26(a)(2) expert, and because a treating physician would not form an opinion as to the presence or absence of informed consent in the course of his or her treatment, plaintiff is unable to meet the expert testimony requirement of section 4401-a.  Plaintiff's argument in response, that section 4401-a is inapplicable because it applies only to malpractice claims based solely upon lack of informed consent,[14] and this claim is based upon negligence and breach of contract, in addition to lack of informed consent, is unavailing.  Plaintiff raises three discreet claims in his complaint, specifically, negligence, breach of contract, and lack of informed consent.  His lack of informed consent claim is in fact, contrary to his assertions, based solely on lack of informed consent.  Section 4401-a therefore does apply to plaintiff's lack-of-informed-consent claim, and

---

[14]New York Civil Practice Law and Rules Section 4401-a states:

> A motion for judgment at the end of the plaintiff's case must be granted as to any cause of action for medical malpractice based <u>solely</u> on lack of informed consent if the plaintiff has failed to adduce expert medical testimony in support of the alleged qualitative insufficiency of the consent.

(emphasis added).

plaintiff is unable to meet its expert testimony requirement
because Dr. Rousso has been precluded from testifying
as a Rule 26(a)(2) expert.  Plaintiff has not submitted any
evidence to suggest, nor can this court assume, that Dr. Rousso,
in his capacity as plaintiff's treating physician, formed an
opinion as to the presence or absence of informed consent in the
course of his treatment of plaintiff, that would be admissible
under Rule 702 of the Federal Rules of Evidence.  Accordingly,
plaintiff is unable to adduce expert testimony in support of his
lack-of-informed-consent claim and summary judgment is
appropriate based on New York Civil Practice Law and Rules
Section 4401-a.

VI.  Conclusion

        Accordingly, for all the foregoing reasons, I
respectfully recommend that defendants' motion for summary
judgment be granted with respect plaintiff's medical malpractice
claim against Dr. Irizzary, but denied with respect to his
medical malpractice claim against all other defendants.  I
further respectfully recommend that defendants' motion for
summary judgment be granted with respect to plaintiff's breach-
of-contract and lack-of-informed-consent claims against all
defendants.

VII.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, 500 Pearl Street, Room 650, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Berman.  FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:   New York, New York
         January 9, 2007

                              Respectfully submitted,



                              _____
                              HENRY PITMAN
                              United States Magistrate Judge



Copies mailed to:

Kenneth J. Burford, Esq.
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271

Philip J. Dinhofer, Esq.
Philip J. Dinhofer, LLC
450 Seventh Ave. - Suite 10123
New York, NY 10123