UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

RONI GILADI,                                                           94 Civ. 3976 (RMB)(HBP)

                                        Plaintiff,          **PLAINTIFF'S OBJECTIONS**
                                                            **TO MAGISTRATE JUDGE**
        -against-                                           **PITMAN'S REPORT AND**
                                                            **RECOMMENDATION**
BERISH STRAUCH, HARRIS STERMAN,
DEBRA IRIZARRY, MONTIFIORE
MEDICAL CENTER, "JOHN DOE" and "RICHARD
ROE", last two names being fictitious,
true names being unknown,

                                        Defendants.
-----------------------------------------------------------------X

        Plaintiff, RONI GILADI, in accordance with 28 USC § 636(b)(1) and Fed. R. Civ. P. 72,

does hereby tender the following objections to the January 9, 2007 report and recommendation

of Magistrate Judge Pitman and accordingly request that this Court reject that portion of said

report and recommendation which calls for the dismissal of plaintiff's complaint as against the

defendant DEBRA IRIZARRY.  Plaintiff also seeks rejection of that portion of said report and

recommendation which calls for the dismissal of plaintiff's cause of action for breach of

contract.

        Plaintiff objects to that portion of the report and recommendation of Magistrate Judge

Pitman which calls for the dismissal of plaintiff's complaint as against the defendant DEBRA

IRIZARRY.  Judge Pitman rationalizes his position based upon the fact that plaintiff adduces no

affirmative evidence that defendant IRIZARRY performed surgery upon plaintiff.  We disagree

and instead assert that there is no such shortcoming that is fatal to plaintiff's cause of action

against defendant IRIZARRY.

        Because he was unconscious and under general anesthesia at the time, plaintiff has no

idea which of the three defendant doctors actually performed the surgery upon him.  What we do

know is that there were allegedly three surgeons in the operating room with him, the defendants

STRAUCH, STERMAN & IRIZARRY.  The evidence adduced by plaintiff in defense of the

motion for summary judgment unequivocally establishes that there is considerable doubt,

confusion and contradiction amongst the defendants' themselves as to who actually performed

the surgery upon RONI GILADI.  Thus there being an issue of material fact as to who performed

the surgery, it would be error to grant summary judgment to any one of these defendants on this

specific account, no less the defendant IRIZARRY as recommended by Magistrate Judge

Pitman's report.

## FACTS[1]

1) Defendant STRAUCH

At various points during the course of his deposition, the defendant STRAUCH claims

either he or defendant STERMAN performed the surgery.  (Compare STRAUCH 91:3-11[2] with

STRAUCH 100:12-15 -  "The operative report indicates what Dr. Sterman did.")(See also,

STRAUCH 101:6-22 where defendant STRAUCH asserts he would never use vicro sutres, no

less secure the allegedly transplanted nerve in place with any kind of suture, further indicating

that he did not perform the procedure described in the very operative report he signed.)

---

[1] All facts cited herein were specifically cited in plaintiff's memorandum in opposition to defendant's
motion for summary judgment dated May 22, 2006, as well as our counter statement of facts, contained within our
Rule 56.1 statement and equally supported by our tender of evidentiary proof in admissible form, most notably in
this instance the deposition testimony of each respective defendant.

[2] Abbreviated references to deposition transcripts already in evidence before the Court will be in the format
as stated which is to be read in this instance as that of the deposition of the defendant STRAUCH, page 91, lines 3
to 11.

2) Defendant STERMAN

The defendant STERMAN insists that defendant STRAUCH performed all of his surgeries himself (STERMAN 15:16-24), but as regards the operative report which he dictated for RONI GILADI he exclaimed: "That is the procedure I performed." (STERMAN 48:18). Furthermore, until coached by his attorney to change his testimony the defendant STERMAN testified that just he and defendant IRIZARRY were the only two doctors in the operating room at the time of plaintiff's surgery.  (STERMAN 57:11-20).   Defendant STERMAN also testified that as a resident he would ordinarily require some advance preparation and/or study of the procedure to be performed (STERMAN 14:13-16), however, in the case of RONI GILADI he only learned of his surgery when he saw him in the operating room (STERMAN 10:12017).


3)     Defendant IRIZARRY

Defendant IRIZARRY, an accomplished surgeon who had by the time of plaintiff's surgery completed a five year residency and one year fellowship in general surgery (both at NYU)(IRIZARRY 6:20-23) before entering her plastic surgery residency at MONTIFIORE, claims that she does not know who did the actual cutting on RONI GILADI, but thinks it may have been defendant STERMAN (IRIZARRY 58:13-25).  Nonetheless defendant IRIZARRY claims that she could not have performed this surgery because as the "junior" resident, it would have been "improper" for her to be performing surgery at that time. (IRIZARRY 58:13-25).

In stark contradiction to this allegation by defendant IRIZARRY, stands her own testimony given earlier in that very same deposition wherein said defendant testified that upon entry to the plastic surgery program at MONTEFIORE she assisted the defendant STRAUCH in

3

surgery **and that he assisted her with surgery as well** (IRIZARRY 11:20-24).  Thus defendant

IRIZARRY contradicts her later testimony when she herself readily admits that she was

performing surgery as a "junior" resident and was assisted by defendant STRAUCH.  Moreover,

the testimony of the defendant STERMAN explicitly contradicted defendant IRIZARRY's as to

this specific point in that he states that residents do perform the actual surgery (STERMAN

14:11-12) and that even  junior residents are obliged to keep records of the surgeries where she

assists. (STERMAN 20:13-21:18, contradicting IRIZARRY 14:14-15:9).


### ARGUMENT

### THERE ARE TRIABLE ISSUES OF FACT AS TO WHETHER OR NOT DEFENDANT IRIZARRY PERFORMED THE SURGERY UPON PLAINTIFF, RONI GILADI.


We note with chagrin that the prime authority relied upon by Magistrate Judge Pitman, in

support of his conclusion that plaintiff did not meet its burden of proof in defense of the motion

brought by defendant IRIZARRY, does not stand for the limited proposition for which it is cited

by Judge Pitman, but rather when read in its full context the case of Wantanabe Realty Corp v.

City of New York, 315 F.Supp.2d 375, 394, n.10 (SDNY 2003) stands for a much a broader

proposition that supports the evidence adduced by plaintiff as giving rise to a triable issue of

fact.  In Wantanabe what Judge Kaplan fully stated at footnote 10 was as follows:

> Summary judgment ordinarily cannot be defeated **merely** by a
> contention that a jury might disbelieve a movant's witnesses.
> **Where, however, there are ""specific bases for possible
> impeachment,"" credibility questions in appropriate
> circumstances may result in denial of such a motion**. *See, e.g.,*
> 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
> Federal Practice and Procedure: Civil 3D §§ 2726, at 445-47
> (1998). Of course, disbelief of a movant's denial of a fact which

the non-movant has the burden of proving is not sufficient to sustain that burden. *E.g., Venzie Corp. v. United States Mineral Prods. Co.,* 521 F.2d 1309, 1312 (3d Cir.1975) (""**mere** disbelief [of defendants' denials] could not rise to the level of positive proof of agreement to sustain plaintiffs' burden of proving conspiracy""); *Ortho Diagnostic Systs., Inc. v. Abbott Labs., Inc.,* 920 F.Supp. 455, 477 (S.D.N.Y.1996) (same).

Thus, contrary to that stated by Magistrate Judge Pitman, what Judge Kaplan said in Wantanabe is that where the party opposing summary judgment comes forward with specific evidentiary bases of impeachment, and not just the mere metaphysical disbelief of testimony, these kinds of credibility questions meet the opponent's burden of proof establishing a triable issue of fact.

It therefore follows that based upon all the foregoing facts in evidence in opposition to defendant's motion for summary judgment and contrary to that stated by Magistrate Judge Pitman, a jury could properly conclude that defendant IRIZARRY performed the surgery upon plaintiff. This conclusion would be predicated upon the defendant STRAUCH's testimony, which disavows the very operative report he signed. Therefore, based on this kind of evidence a jury could properly accept the fact that the operative report is a fabricated description of a procedure that never occurred. Defendant STRAUCH's operative report being a boldfaced lie, a jury in search of the truth could readily find as per the inconsistent testimony of all the defendant doctors that defendant STRAUCH did not perform plaintiff's surgery.

A jury could further accept as true the testimony of defendant STERMAN that just he and defendant IRIZARRY were alone in the operating room with plaintiff, and that defendant STRAUCH was not present. A jury could further accept as true the testimony of defendant STERMAN that he was not prepared for the ulnar nerve transposition surgery to be performed

on RONI GILADI.  His unpreparedness together with the inconsistent testimony of each

defendant as to who actually performed plaintiff's surgery, could permissibly permit a jury to

conclude that defendant STERMAN did not perform the surgery on RONI GILADI.

Having permissibly rejected the only two other doctors allegedly in the operating room,

based upon the credible evidence adduced herein a jury could properly find that plaintiff's

surgery was actually performed by the only other doctor in the room, the defendant IRIZARRY,

an accomplished surgeon in her own right of some seven years experience by the time of

plaintiff's surgery, having successfully completed both residency and fellowship in surgery at

NYU before attending MONTEFIORE's plastic surgery residency program.  This conclusion

would be supported by defendant's IRIZARRY's testimony that early on in her plastic surgery

residency she did in fact perform surgery and was assisted by defendant STRAUCH (which

starkly contradicts the credibility of her later testimony that as a junior resident it was

"improper" for her to do surgery).[3]   (So too, a jury could accept defendant STERMAN's

testimony that junior residents are in fact required to keep records of their surgeries and thereby

find that the true reason why the defendant IRIZARRY claimed she had kept no record of this

surgery was in cover up of her own misdoing at the surgery she performed upon the plaintiff,

RONI GILADI.)

In view of all the foregoing, it is clear that plaintiff has in fact adduced sufficient

evidence in opposition to defendant's motion which establishes a triable issue of fact as to

whether or not the defendant IRIZARRY was the doctor who performed plaintiff's surgery.  The

---

[3] We note, contrary to that intoned by Magistrate Judge Pitman's report, the word "improper" as used by defendant IRIZARRY at her deposition, is not synonymous with impossible and does not rule out the fact that she may have performed plaintiff's surgery.

defendants themselves are self-contradictory and contradictory of each other.  They are all

proven liars, whose testimony a jury may fully reject, or which a jury may only partially credit in

the manner detailed above in order to establish that defendant IRIZARRY actually performed

plaintiff's ill fated surgery.  Therefore under the very specific facts of this case, as proven by

evidence in admissible form and not merely some metaphysical doubts about existing testimony,

and contrary to that stated by Magistrate Judge Pitman, there are strong credibility issues of fact

which are supported by specifically detailed contradictions in the admissible evidence, upon

which a jury may properly find that any one defendant performed plaintiff's surgery, inclusive of

the defendant IRIZARRY, who was by then already an accomplished surgeon in her own right.


### AS REGARDS PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF CONTRACT, MAGISTRATE JUDGE PITMAN INCOMPLETELY STATES BOTH PLAINTIFF'S PROOF AND CLAIM


We agree with Magistrate Judge Pitman's assessment of the controlling law as to the

standard of proof required to substantiate a cause of action for breach of contract as set forth by

the quotation from the Monroe case cited on page 38 of his report and recommendation - i.e.:

"based upon an express special promise to effect a cure or to accomplish some definite result".

Magistrate Pitman, however, only gleaned half of what defendant STRAUCH promised

RONI GILADI from the testimony cited at page 32 of our memorandum in opposition.  There

we specifically pointed Magistrate Judge Pitman to pages 153:20 - 154:3 of RONI GILADI's

deposition of June 22, 1995 and to pages 103:18 - 104:3 of RONI GILADI's deposition of April

22, 1996.  At both of these locations in his testimony, RONI GILADI detailed the specific

promise made to him by defendant STRAUCH that he would be pain free post operatively,

which in the context of this case is something with far greater meaning than merely saying that

the procedure would not be painful as did Magistrate Judge Pitman at page 39 of his report.

     We further note that in his Rule 56.1 Statement, under the heading of Plaintiff's Counter

Statement, which commences at the fourth page of that document, plaintiff specifically alleged

the following facts in evidence:

    2)     At that time RONI GILADI presented with complaints of pain to his left wrist and hand which were secondary to work and not a knife wound he had incurred to the left wrist several years prior and its contemporaneous corrective surgery. (GILADI 6/22/95; 121:15 - 122:11)

    3)     After a period of conservative management failed defendant STRAUCH sent RONI GILADI for an EMG study.   (GILADI 6/22/95; 126:24-127:4)

    4)     Defendant STRAUCH explained to RONI GILADI that the EMG showed that he had entrapments of both the Ulnar nerve and the Median nerve at the level of the wrist which required corrective surgery. (GILADI 3/6/96; 65:21 - 66:22)

    5)     Defendant STRAUCH then told RONI GILADI that he also had an entrapment of the Ulnar nerve at the level of the elbow, notwithstanding the fact that RONI GILADI never had any complaints related to his elbow.  (GILADI 6/22/95; 170:2-171:25)

    6)     RONI GILADI states that defendant STRAUCH told him, that it was not uncommon to have EMG evidence of injury to the Ulnar nerve at the level of the elbow without complaints.  Defendant STRAUCH stated to RONI GILADI that while he was performing the wrist surgery he would also perform Ulnar nerve transposition surgery (GILADI 6/22/95; 151:2-13) so as to prevent future surgery (GILADI 6/22/95;172:10-25), following which RONI GILADI would thank him for saving him from ever experiencing the pain of this then asymptomatic condition.  Defendant STRAUCH further told RONI GILADI that this would be "pain free" surgery (GILADI 6/22/95; 153:20 - 154:3 & 4/22/96; 103:18-104:3).

     Accordingly it is all too clear that plaintiff's uncontroverted evidence submitted in

opposition to defendant's motion for summary judgment established that defendant STRAUCH

made several very detailed and specific promises that went far beyond that described by

Magistrate Judge Pitman's Report.

I.      Defendant STRAUCH specifically promised RONI GILADI that by operating on his elbow (for which plaintiff had no complaints) he would prevent the need future surgery to his elbow.  Nonetheless plaintiff did in fact undergo a second surgery at his elbow sometime thereafter which subsequent surgery was specifically caused by defendants negligence in the instance of the original surgery.

II.     Defendant STRAUCH promised RONI GILADI that he would thank him following his surgery for never experiencing the pain of this then asymptomatic condition of his elbow.  RONI GILADI, however, could not possibly thank defendant STRAUCH as promised, because from the moment when he awoke from the surgery until the present day his elbow has been in constant pain on account of unexplained partially severed nerve that occurred during that original procedure performed by defendants.

III.    When promising RONI GILADI that he would be pain free post operatively, that meant after the recovery period.  Obviously there would be some minor pain and discomfort due to the intrusively incisional nature of the procedure.  Indeed, it strains credibility to suggest that defendant STRAUCH was promising that the surgery itself would be without its transient short-termed pain.  Nor does the defendant STRAUCH himself come forward with any explanation to this effect.  Rather, the more credible explanation of that statement is that defendant STRAUCH was promising RONI GILADI that in the grand scheme of his life, after a brief period of convalescence,  RONI GILADI would be pain free in the region of his elbow for the rest of his life as a result of the transposition surgery.  Clearly this promise was broken as defendants injured plaintiff's nerve during their ill fated attempt at transposition.  They never told plaintiff about the injury they inflicted upon him.  They led plaintiff to believe his nerve had been transposed when in fact it had not. Most notably and in stark contradiction to defendant STRAUCH's promise, RONI GILADI has been in pain in his elbow every day of his life ever since the defendant's surgery.

The foregoing uncontroverted evidence clearly establishes that defendant STRAUCH made both "an express special promise to effect a cure" and "to accomplish some definite result" Monroe, 84 AD2d at 576, as cited by Magistrate Judge Pitman at page 38.  These promises went both to the promise of a cure of an illness imagined by defendant STRAUCH for which RONI GILADI had no complaints and to defendant STRAUCH's specific promises and representations that RONI GILADI would enjoy a life free from pain at his elbow.

9

Based upon plaintiff's uncontroverted evidence regarding these express special promises made by defendant STRAUCH, the cause of action for breach of contract should not be dismissed and the recommendation of Magistrate Judge Pitman rejected on this account too.

## CONCLUSION

For these reasons, that portion of the report and recommendation of Magistrate Judge Pitman which calls for the dismissal of plaintiff's cause of action against the defendant IRIZARRY should be rejected.  So too, that portion of Magistrate Judge Pitman's report and recommendation which calls for the dismissal of plaintiff's cause of action for breach of contract should also be rejected.

Dated: Rockville Centre, New York
        January 30, 2007

*Philip J. Dinhofer*

By: Philip J. Dinhofer, #6940
**PHILIP J. DINHOFER, LLC**
Attorneys for Plaintiff(s)
77 N. Centre Ave. - Suite 311
Rockville Centre, NY 11570
516-678-3500

10