UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RONI GILADI,

                             Plaintiff,

     -against-

BERISH STRAUCH, HARRIS STERMAN, DEBRA
IRIZARRY, MONTEFIORE MEDICAL CENTER,
"JOHN DOE" and "RICHARD DOE", last two names
being fictitious, true names being unknown,

                         Defendants.
-------------------------------------------------------------X

**AFFIDAVIT IN OPPOSITION**

94 Civ. 3976 (RMB) (HBP)

**KENNETH J. BURFORD**, first being duly sworn, deposes and says:

1.      I am an attorney at law duly admitted to practice law before the Courts of the State of New York and a member of the bar of The United States District Court for the Southern District Court of New York.

2.      I submit this affidavit in opposition to plaintiff's motion in limine seeking to preclude various items of discovery.

3.      At the outset, plaintiff claims in this medical malpractice action that he experienced iatrogenic injury during surgery by Dr. Berish Strauch December 12, 1991 at the Montefiore Medical Center. He claims injury at his left elbow secondary to injury to his nerve intra-operatively. A copy of the report of Dr. Joel Grad, M.D., the defense liability expert is attached hereto as Exhibit A. Dr. Grad has considered the material in forming his conclusions about this matter, and all the materials will also be useful for cross examination of plaintiff and his purported expert, Dr. Rousso. A copy of the defense exhibits as attached as Exhibit G.

<u>PLAINTIFF'S MOTION IS PREMATURE IN
THE ABSENCE OF ACTUAL TRIAL EVIDENCE
BEING SUBMITTED</u>

4.    At the offset, plaintiff's counsel has recently conceded in conversations, that he does not believe that a motion in limine seeking to preclude evidence is properly considered by the Court at this time, as it is of necessity dependant upon the evidence admitted or offered for admission during the trial of this matter, now scheduled for late September 2007.

5.    Indeed, it is difficult, if not impossible to address all possible, relevant uses of the evidence at the time of trial. Hence the Court should not consider plaintiff's motion at this time as it most properly and perhaps exclusively the province of the trial Judge to entertain and rule on objections to evidence in light of their intended use. A ruling at this time is premature as the actual contours of, for example, plaintiff's testimony are not clear.

<u>REBUTTAL TO PLAINTIFF'S ARGUMENT</u>

6.    Without prejudice to the foregoing argument that plaintiff's motion is premature, the following is offered:

a.    This objection by plaintiff merely asks that the Court follow the law on collateral sources, a position which is not objected to by the defense.  To the extent that plaintiff seeks to preclude the use of , inter alia, non-financial records of the carrier such as the State Insurance Fund/Workers Compensation Board premised upon such argument, then plaintiff misapprehends the law. Clearly, as this Court has already ruled, witnesses, such as physicians, may testify in this matter to their

knowledge of this matter. Additionally, the record is replete with evidentiary information concerning plaintiff's alleged injuries, and the care condition and treatment thereof, as well as their his condition. Indeed, updated authorizations for the Workers Compensation Board are also required. Additionally, merely calling a financial entry a collateral source does not end the inquiry as payments may be made for multiple complaints, some related, some may not be related. Moreover, treatment that plaintiff alleges may not be for an injury related to Dr. Strauch's surgery, or may be only partly related. Hence, it is not proper to delete all references, without knowing to which payment is at issue, and for which condition.

b.      Plaintiff seeks to preclude the records of the New York State Workers Compensation Claims filed by Mr. Giladi in this matter. Those claims involve subsequent injuries to the affected part of the body, and additionally, are relevant with respect to claims made by Mr. Giladi pertaining to any loss, disability or ability to engage in activities of daily living, enjoyment of life, etc. Solely by way of example, plaintiff filed claims with the Worker's Compensation Board on December 18, 1991 (six days following surgery by Dr. Strauch), May, 1993, September, 1993, and in November, 1993 for subsequent injuries to both upper extremities (the affected body part in the left arm) (exhibit B). Most dramatically, the first of those claims relate to the period of time six days following Dr. Strauch's surgery. Additionally, Mr. Giladi had testified before the New York State Compensation Board with respect to his claims, his injuries, and his physical

abilities. It is impossible to say precisely what use will be made of these transcripts in the absence of hearing plaintiff's testimony, along with others. In sum, the use to be made of the Worker's Compensation Records, includes not only physical examinations undertaken by physicians, the testimony by whom this Court has already approved (over plaintiff's objections), but also forms compiled by Mr. Giladi with respect to injuries to his affected extremity following surgery and his abilities to engage in certain activities. Lastly, his prior statements before the Board are also relevant to this matter.

c.  Plaintiff seeks an order preventing the defendants from confusing the jury with references to body parts unrelated to the ulnar nerve injury herein. It, of course, remains to be seen what Mr. Giladi will testify to at trial, with respect to his physical abilities, and the impact of his alleged ulnar nerve injury on his overall condition and abilities. It is premature, as Mr. Dinhofer has recently conceded, for this Court to rule upon specifically what records and issues are relevant, in the absence of testimony by the witnesses. Mr. Giladi claimed disability, as a result of an alleged back injury, for which he was receiving Worker's Compensation for a long period of time. As such there will be aspects of plaintiff's claim that implicates both the upper extremities as well as his other injuries, i.e, plaintiff's claim that he cannot lift heavy objects of necessity implicates both the condition of his upper extremities as well as his back, neck etc. For example at his EBT plaintiff claimed that there are some items that he cannot lift as a result of his arm and some that he cannot lift as a result of his alleged back injury. (EBT plaintiff

Exhibit C at page 111). Parsing out the difference will be the job of the trier of fact. The Board records will help make plaintiff's claims more or less, probable. <u>See</u> FRE 401. So then, any claim by plaintiff to disability, implicates all bodily systems and hence evidence concerning his other disabilities and claims is relevant. Nonetheless, as the Court is aware, we have recently uncovered indications that <u>Mr. Giladi may very well been employed without notice being given to the defendants of this change in this condition</u>. Indeed, plaintiff's attorney has repeatedly claimed that his client was destitute, which now appears not to have been the case.

d.    Recent correspondence with the Court, has indicated that we will be seeking updated employment information from Mr. Giladi in this regard. If it turns out, that Mr. Giladi's employment history is inconsistent with any position he has taken before the Worker's Compensation Board, or benefits that he has accepted from the Worker's Compensation Board, then the records of the Worker's Compensations Board, which pertain to inter alia, the affected extremity, as well as his back injury, may well become relevant to prove, <u>inter alia</u>, fraud. Moreover, the records of the Workers' Compensation Board contain medical reports concerning plaintiff's physical abilities and limitations (if any). Again, the Court has already approved the testimony of Workers Compensation doctors. Hence the records of the Board are most relevant , and certainly meet the standard of FRE 401 (<u>any tendency</u> to make the existence of a fact of consequence more or less probable)

e.    As pertains to plaintiff seeking to preclude lost earnings beyond the initial period of post operative convalescence, the defendants have no intention of submitting a claim to the jury for lost earnings pertaining to Mr. Giladi's alleged ulnar nerve injury. This is particularly true as plaintiff has conceded that he has no such claim in this case. Nonetheless, the defendants do reserve the right to submit for the jury's consideration, evidence that any particular item of damage claimed by Mr. Giladi as an item of disability or inability is more properly a function of his seemingly unrelated disability claims[1] and recovery and not a function of disability or inability to fully use his upper extremity. Moreover, defendants also reserve the right to introduce evidence that such disability, if any, and even though it pertains to his left upper extremity, is a function of separate injury and claim, i.e., repetitive stress, trauma etc to the left upper extremity.

f.    Plaintiff seeks to preclude the testimony of his ex-wife, Beth Giladi in all matters related to the plaintiff's New Jersey matrimonial claims litigation and orders. What plaintiff is in reality attempting to conceal from the jury, are Court Orders from the State of New Jersey impounding plaintiff's passport and barring him from leaving the country[2]. The relevance of these materials, to the extent that it can be discerned at this early pre-trial stage, is that plaintiff claimed to have complied with prior Court Orders to search for his records and other materials, by

---

[1]Plaintiff is no stranger to disability claims, most prominently, he has a claim for injury to his back and both upper extremities allegedly secondary to his employment, not the surgery.

[2]Plaintiff testified to these orders at his EBT 11/22/2000 at, inter alia, pages 92-96 (Exhibit C)

438460.1 DocsNY

traveling to Israel to personally search for these materials.  As plaintiff no doubt

simultaneously  claims to be in compliance with the New Jersey Court Orders,

impounding his passports, such search would have been physically, and legally

impossible to have undertaken. Hence, as plaintiff well knows, Mr. Gialdi may

well be subject to significant claim that he has either not conducted such a search,[3]

in compliance with this Court's orders, or conducted an inadequate search or

misrepresented aspects of the search, as plaintiff will no doubt concede claim to

be and to have been in compliance with the outstanding New Jersey Court Orders

at all times.  It is certainly not the defendant's intention, at this early stage pre-

trial, to re-litigate matrimonial issues, nor his matrimonial obligations, unpaid

child support etc.  Notwithstanding, there is for example nothing irrelevant about

submitting evidence before the jury, attending to indicate that the plaintiff has not

adequately accurately or completely produced his records in this matter or of

expecting plaintiff to explain to the jury how he could have undertaken a search

for such records, in response to Court Order, in a foreign country, when his

passport, was, by Order of the New Jersey Courts, impounded.  There is also a

difference of opinion between plaintiff and the medical records of St. Barnabas

Hospital as to how he was injured in 1987, with plaintiff testifying that his wife

was the cause of the injury and the medical record reflect a self inflicted wound.

See EBT of plaintiff 6/22/95 at pgs 60-63 Exhibit D.  This also reflects upon

---

[3]Plaintiff claimed at EBT to have traveled to Israel to retrieve the records (EBT 3/6/96 at
pg11 Exhibit F).

plaintiff's credibility and the accuracy of his medical history.

g.  Plaintiff seeks in paragraph F to preclude references to one of plaintiff's other law suits, which has apparently been resolved, while he does not set forth why references to that lawsuit, if relevant, in response to testimony Mr. Giladi or others give at trial, should be entertained by this court.  Clearly, in the other law suit, his ADA claimed, he testified at deposition and compiled records and completed forms pertaining to his employment at the Albert Einstein College of Medicine which is the same employment that he had during the time he claims to have been injured by Dr. Strauch's surgery.  Accordingly, his records and testimony with respect to his duties, benefits, obligations, etc are relevant with respect to providing the jury with some historical perspective with respect to his prior employment to the extent that plaintiff claims any impairment of the use of his upper extremity.  He also testified to his treatment and his Workers Compensation claims for his hands etc.  See EBT of plaintiff 6/23/98 at pages 503-510; 563-569) Exhibit E

h.  As to plaintiff's airline flight records, plaintiff testified at deposition on a number of occasions, to his inability to engage in normal activities and in particular, there was testimony from Mr. Giladi as to the circumstances under which he wears his arm braced, and those circumstances when he does not.  For example, it was his testimony that he did not feel the need to wear his brace each time when he traveled abroad (EBT plaintiff 11/22/2000 at page 85, exhibit C) and hence, records establishing how often Mr. Giladi would travel, and even the

compartment in the plane utilized, are relevant towards establishing whether or not Mr. Giladi has an injury to his arm or not. For example, the records of the various airlines, reflect an ***extensive worldwide pattern***[4] of travel by Mr. Giladi which is relevant to the jury's determination as to whether or not Mr. Giladi's abilities to engage in normal activities are at all impaired, or even whether or not there exists an injury at all. It is clear, from Mr. Giladi's world wide travel and the frequency of his world wide travel, that he is not deterred from traveling hundred of thousands of mile, by plane, in coach, by his upper extremity. With respect to plaintiff's claim in his motion, that the defendants were not entitled to these records, there is no such determination by the Court. Indeed, the Court indicated at the January 2006 conference, that there may well be relevance to these records, however, it was premature, in light of the uncertainty as to whether plaintiff's claim would survive summary judgment. Additionally, at this early stage pre-trial, it is impossible to judge what testimony will come from Mr. Giladi with respect to his abilities to engage in substantial activity and to utilize his upper extremity. There is, for example, no discernable reference in any of the airline records, to the fact that Mr. Giladi has a disability, or requires any additional assistance for his world wide travel. Certainly, if in fact, as Mr. Giladi would have us believe from his deposition, that he is obliged to spend his time thinking

---

[4]Multiple and frequent domestic flights, as well as Hawaii, Australia and the Middle East, to name a few.

of ways to protect his arm from contact[5], the jury is entitled to know that he travels hundred of thousands of miles by plane in coach, without wearing his brace.

i. Pages 6,001 through 6,013, are copies of the medical records from the Montefiore Medical Center, a named defendant in this case. As such, thy are relevant towards plaintiff's medical history. Moreover, plaintiff claimed an inability to see certain medical forms provided by Dr. Strauch (EBT of plaintiff 3/6/96 at pg 78 Exhibit F). And indeed, as plaintiff does not challenge several pages of the record, he has waived an objection to the entirety of the chart. Indeed, plaintiff has no challenge for blood test results contained within this chart at pages 6,014 through 6,016 inclusive, but does challenge 6,021 a vital sign sheet, contained within the medical records. Moreover, what plaintiff is attempting to undertake by his motion in limine, is essentially what he failed to do during discovery, and that is inquire of parties and experts, as to whether there was any relevancy to this chart. He certainly can't use the expedient of a motion in limine, to either put the defendants to the choice of preclusion of a record, or explaining to plaintiff in detail the relevance of a record. Nonetheless, the record is part of the plaintiff's medical records from the Montefiore Medical Center, a named defendant in this case, and hence per say relevant too this litigation.

j. It is unclear why plaintiff believes that this record concerning his eyes is irrelevant. His lack of understanding as to the utility of records, which were

---

[5]See Plaintiff's EBT at page 285-286, dated June 22, 1995, exhibit H.

reviewed by defense experts, and, presumably, the plaintiff's expert is not grounds for this motion. The relevancy, will of necessity depend upon testimony at the time of trial, pertaining to plaintiff's abilities, disabilities, and history.

k.    With respect to plaintiff's claim concerning 6,049 and 6,054-55, plaintiff has been provided with legible copies of all of the defense exhibits and hence, his complaint is spurious. He has also had the opportunity to review the original records of the Montefiore Medical Center.

l.    As pertains to plaintiff's motion with respect to 6107 through 6116, these records in part pertain to plaintiff's back as well as his upper extremities and his level of activities, inabilities/disabilities and hence are most certainly relevant to this matter. For example, these records contain a description of plaintiff's complaints or lack there of, pertaining to his upper extremities, as well as, for example at 6109, complaints concerning his wrist and upper extremity and physical therapy reports that describe his complaints, or lack there of his ability to ride a bus to and from his appointments, his lack of complaints pertaining to his upper extremities, additionally, these records are relevant in the sense that they document or will refute any claim by plaintiff that his left upper extremity is what bothers him from engaging in activities, and these, indeed the entirety of his records pertaining to his back injury are relevant to refute any claim that it is his left upper extremity that bars him from engaging in any activities. Moreover, the specific records referred to by plaintiff contain numerous references to treatment to his affected extremity including ultrasound treatments to his left elbow. Additionally, even

the back complaints are relevant as they impact upon his ability despite the condition of his left arm to carry out certain activities which he also claims are limited by his arm injury.

m.     As pertains to plaintiff's objections to 6117 through 6119, these records relate to plaintiff's medical leave from employment, and may be relevant again depending on plaintiff's testimony as to when or why he became unable to engage in normal daily activities.

n.     As pertains to plaintiff's claims at 6120 - 6121, these records relate to plaintiff's inability to work, and hence are relevant to refute any claim by plaintiff that he has lost any ability to engage in normal activities of daily living, etc as result of his upper extremity. Moreover, solely by way of example, 6121, specifically refers to his hands.

o.     As pertains to 6122-6123, this is a letter signed by Roni Giladi, indicating that <u>his absence from work is not related to surgery of his left upper extremity that occurred in December 1991, and indeed, he notes that any claim that there is a connection between his surgery in 1991, and his inability to work, "could not be further from the truth."</u>[6] Moreover, it is a statement by Mr. Giladi as to why he chose to be treated by a physician in Israel as opposed to treatment by a physician at least in the United states, where he could be seen regularly, and as needed. Additionally, 6122 contains statements by Mr. Giladi concerning

---

[6]This is further evidence that plaintiff's inability, if any, to engage is substantial activity is not related to his malpractice claim.

recommendations made to him by Dr. Russo who he claims to be the physician "overseeing the medical condition of his left elbow."

p.    As pertains to plaintiffs concerning 6124 through (presumably 6169) these records document Mr. Giladi's failure to attend at scheduled therapy appointments, which impacts upon any claim that he diligently or dutifully followed the physicians instructions[7], contain references to his left elbow and treatment to it, and his abilities, or inabilities, to engage in activities.  Merely by way of example, 6133, clearly contains references to his left forearm as well as documentation of his overall physical abilities/disabilities.  Additionally, 6137 contains references to an evaluation of his left upper extremity as does 6138, etc.  6143 recites his history of a left wrist injury and subsequent repair.  6146 recites his history of various injuries, including a history of his arm an elbow and treatment therefore.  6146 details a physical examination of his upper extremity.  Indeed, the records are replete with references to relevant parts of the plaintiff's body together with his inabilities, and disabilities. It is also significant to note that even those records which do not specifically refer to his upper extremities are relevant in that obviously plaintiff had no complaint concerning his upper extremities in those occasions, otherwise, they would have been noted in the record.

q.    As to 6153, there are clear entries in the record pertaining to the bilateral carpel tunnel syndrome, which is relevant to this matter for obvious reasons.  Similarly,

---

[7]A failure to follow physician recomendations, including Dr. Rousso and Dr. Goldstein form a base of defense in this matter.

438460.1 DocsNY

6157 contains entries pertaining to his left upper extremity, its condition, together with its abilities and inabilities. So to, 6158. Similarly, there were entries in 6159 - 6160 detailing the condition of his upper extremities together with injuries to his upper extremities, abilities and inabilities to use them. Additionally, 6162, part of the Worker's Compensation Board Records, specifically contains entries pertaining to plaintiff's alleged left wrist injury and his care and treatment together with abilities. Similarly 6163, is a record pertaining to Mr. Giladi, indicating that in June 1993, he was carrying what we know from other discovery to be heavy video equipment when he felt the pain in his back. Obviously, his ability to carry equipment is documented in this form, and its relevance includes the fact of an ability to use his upper extremities, to carry heavy equipment. So to, the balance of the records in this group of objections by plaintiff, pertain to his abilities and inabilities to carry materials, his functional and residual abilities, or inabilities, both as limited by his separate back injury, but also as pertains to his claim of limitations, and inabilities pertaining to his upper extremities. Indeed, the last record in this group, 6169, specifically relate to his bilateral carpel tunnel syndrome, and hence by definition is relevant to his claim concerning inabilities and disabilities, of the upper extremities.

r.      6183 through 6191, have already been discussed, supra and relate to plaintiff's airline travel records, the relevance of which is based upon his claims at deposition as to when he did or did not have to wear his brace, and his claims concerning his daily need to protect his extremity from contact, (See 11/22/00

EBT at pg 104 Exhibit C) many of which claims commonly belied by the airline travel records. His travel records also relate to his claim that he searched in Israel for his personal records. The airline records will either confirm or deny such a trip being made.

s.    6192 through 6202 pertain to plaintiff's New Jersey matrimonial action the relevance of which is at 6194, wherein the New Jersey Courts ordered that his ex-wife's attorney shall hold defendant's American and Israeli passports and hence, the jury may properly inquire as to how it is plaintiff complied with his obligations in this matter, to search through his records, which were allegedly in Israel, when in fact his American and Israeli passports were by Court order, in the custody of his ex-wife's attorney.

t.    As pertains to plaintiff's objection[8] 6203 through 6206, the Court has already ruled upon the ability of Workers Compensation physicians to testify in this matter, and hence his objections to these documents have already been dispensed with. The relevance of Dr. Helft's records at 6203 are obvious from even a cursory review of these records, and include, without limitation, the fact that in June 1993 he was loading heavy video equipment into a truck. Proceeding no further from the first sentence, the relevance of these records is obvious in that

---

[8]As to plaintiff's persistent objection that he cannot cross examine a document, the repeated objection is frivolous, as his ability to cross examine a medical record does not determine admissibility. This is especially true where plaintiff had the ability in the Workers Compensation matter to cross examine any of these doctors, if he chose and if there was anything inaccurate. Moreover, as to plaintiff's persistent objection that no expert makes reference to the records etc, it is clear from Dr. Grad's report, what he reviewed and moreover, these records can always be used to cross examine plaintiff's expert, without proper objection by plaintiff.

plaintiff was carrying and otherwise using both upper extremities to load heavy video equipment. We know after that plaintiff claims to have injured his affected arm at that time.

u.  Additionally, Dr. Helft's records contain a history of his alleged upper extremity treatment, including surgery by Dr. Strauch and his physical complaints and physical examination as of January 1995. Dr. Helft's hand written notes accompany his report and hence are most relevant. He notes that the sum of plaintiff's complaints are weakness of his left fingers 4 and 5.

v.  As to plaintiff's objections at 6207 - 6208 are the report of Dr. Petigrow, which also contains a history of plaintiffs carrying heavy equipment as well as complaints pertaining to his hands and surgery with Dr. Strauch in addition to others. Dr. Petigrow also notes his conclusion and recommendations for plaintiff's care.

w.  As to plaintiff's objections at 6244 through 6261, once against the court has already dealt with plaintiff's objections concerning the fact that these are Workers Compensation physicians who saw plaintiff from time to time with respect to his orthopedic complaints. These are records, of Dr. Fulco, which note a <u>long history of bilateral carpel tunnel syndrome</u> and his use of wrist splints. <u>Indeed, Dr. Fulco also conducts an examination of the upper extremities showing full range of motion of the shoulders, elbows, wrists and motor strength at a 4 out of 5. There was no evidence of atrophy in the upper extremities and no sensory losses.</u> Obviously, Dr. Fulco's records are most relevant. Dr. Fulco's records continue on

a number of occasions to repeat the physical findings with respect to the upper extremities and his abilities and in abilities.

x.    As pertains to plaintiff's objections at 6271 through 6285, it is to be noted that the record of Madison Avenue Orthopedic Associates, at 6271 include historical information with respect to plaintiff loading heavy video equipment, at the time of a June 1993 subsequent injury to his hands, wrist and back, injury, as well as the condition and any inability or lack there of, pertaining to his left hand.  They take a past medical history of EMGs, as well as his carpel tunnel syndrome.  The records continue at 6272 for example, with reference to his left wrist and elbows, together with a physical examination and historical information.  Accordingly, it is by no stretch of the imagination the case that these records are irrelevant.

y.    As pertains to plaintiff's objections at 6286 - 6287, these are the records of St. Barnabas record Medical Center, documenting a prior injury to plaintiff's hand, who caused the injury, as a result of what can best be described as an unsuccessful suicide attempt, in that he stabbed himself in the wrist with a knife.  Clearly, the relevance of these records include documentation of a prior injury, to the extremity at issue and hence the probability of residual damage secondary to the knife wound, all prior to Dr. Strauch's surgery.

z.    As pertains to plaintiff's objections at 6297 through 6299, this is the physical examination of plaintiff pertaining to his application for admission to Bergen Community College in April 1998, and includes an examination of his extremities

(negative) and his physical ability.[9]  As documented by Dr. Greenfield.

aa.   As pertains to plaintiff's objections at 6300-6302, once again, plaintiff is

attempting to relitigate this Court's prior ruling with respect to Worker's

Compensation physicians.  Dr. Rosenbloom's reports contain a history of him

lifting heavy equipment following Dr. Strauch's surgery, the fact that he was

suffering from Carpel Tunnel Syndrome and ulnar nerve impingement in both

upper extremities as well as his past history of surgery in 1991.  He documents his

complaints pertaining to the upper extremities, or the lack there of and notes that

he has his complaints bilaterally.  He notes that his clinical neurological

examination remains normal, and that his subjective symptoms are out of

proportion to any objective findings.  Muscle testing was normal, as was muscle

tone.  Hence the records are relevant to establish both a normal exam of the

affected arm but also to note that plaintiff's complaints are out of proportion to

any objective findings.

bb.   Plaintiff's objections at 6303 - 6304, pertain tot he records of Dr. Kulick, and his

examination of plaintiff in September of 2005.  His impression after physical

examination of his upper extremities, relates to the fact that plaintiff has bilateral

carpel tunnel syndrome, together with the fact that plaintiff attributed the

problems with this upper extremities, to his work as a video technician, and

obviously not to any surgery by Dr. Strauch.  These records are obviously

---

[9]These records also document no usual defects, (20/30 vision) no significant past medical
history, and good reflexes in his arms.

relevant.

cc.  Plaintiff's objections at 6306 through 6317 relate to Dr. Strauch's curriculum

viatate, which will as an aside, no doubt be updated by the time of the trial of this

matter.  Nonetheless Dr. Strauch's curriculum vitae contains relevant information

pertaining to his education, professional activities, etc. and has obvious relevance

to plaintiff's claims in this matter.

dd.  As pertains to plaintiff's objection to exhibit 6319, this is a letter written on behalf

of plaintiff's purported expert, Dr. Russo, by his assistant, and has been testified

to by Dr. Rousso, pertaining to the chain of custody of certain photographs that

Dr. Rousso claims to have taken intraoperatively.  This letter, in relevant fashion,

contradicts Dr. Rousso's testimony seeking to connect the purported photographs,

to plaintiff's surgery.  Accordingly the letter is most certainly relevant and can be

used to cross examine Dr. Rousso, whether admitted into evidence independently

or not.  Essentially, this letter indicates that the alleged photographs, were not in

fact developed and secured by Dr. Rousso, but rather by the plaintiff himself and

hence, is relevant to cross examine both.

ee.  As to plaintiff's objections to defendant's exhibits Z which is the plaintiff's

testimony in the companion ADA lawsuit against Yeshiva University, as noted in

the draft of a pre-trial order, plaintiff's testimony in that action will be relevant for

purposes of impeachment, to the extent that he testifies in this action differently

therefrom.  Not having heard plaintiff's trial testimony in this action as of yet, it is

of course impossible to delineate precisely the areas in which that testimony will

be useful, however, since plaintiff has testified in the companion lawsuit with respect to his injuries, disabilities and inabilities, it is anticipated to be most relevant, in this case, to the extent plaintiff alters his testimony.  See supra.

ff.    So to, with respect to exhibit AA, which is plaintiff's testimony before the Worker's Compensation Board, which similarly deals with his complaints concerning his physical care, physical condition, his condition, care and treatment and the effect that his various injuries, have had upon his ability to enjoy his life.

gg.    Exhibit ab, are the medical records of Dr. Martin Posner, and his curriculum vitae, which have been exchanged with plaintiff and which have obvious relevance, given Dr. Posner's role as an examining physician in this matter.  His CV will be updated as well as trial approaches.

hh.    With respect to Exhibit ac, we are advised that Dr. Gulukashow was a treating physician of the plaintiff, and we are to date anxiously awaiting an authorization to obtain his records.

ii.    Plaintiff similarly objects to the records of Dr. Dan Herness, a treating orthopedist of the plaintiff in Israel, who documents in his records, in his medical history with respect to his upper extremities, his surgical treatment and his complaints and physical condition as of April 1994.  Indeed, Dr. Herness concludes that the condition of Mr. Giladi's upper extremities, as of 1994, was a consequence of his continuous strenuous work with recurrent rotational trauma over a long period of time to both wrists and elbows.  The relevance of his records is obvious.

jj.    As to plaintiff's complaints concerning Dr. Kanner's records.  By separate cover,

we are providing Mr. Dinhofer with <u>yet another copy</u> of Dr. Kanner's records,

<u>which were obtained</u> with plaintiff's authorization.  The medical records

document Dr. Kanner's treatment both prior and subsequent to the surgery by Dr.

Strauch and are obviously relevant to this case, detailing the care condition and

treatment of the, inter alia,  affected arm.

kk.    For all of the above reasons, plaintiff's motion must be denied in it's entirety.

Clearly all of the material submitted by the defense for inclusion in the evidence

of this matter is relevant and in accord with FRE 401. Plaintiff's motion is but a

fishing expedition, attempting to force the defense to lay out it's case for his ease

of understanding prior to trial. As such plaintiff's motion must be denied.

Wherefore, the defendants pray that this Court enters an order denying plaintiff's motion

in it's entirety and additionally award the defense such other further and different relief as to this

Court seems just and proper.

Dated: New York, New York
          April 2, 2007

Kenneth J. Burford (7090)

Sworn to before me this 2nd
day of April, 2007

ERIKA C. BROWNE
NOTARY PUBLIC, State of New York
438460.1 Doc No: 02BR6160682
Qualified in New York County
Commission Expires Feb. 12, 2011