# EXHIBIT A

JOEL B. GRAD, M.D., F.A.C.S., C.A.Q.H.S.*
95 UNIVERSITY PLACE, 8TH FLOOR
NEW YORK, N.Y. 10003

TEL. (212) 604-7362 · FAX. (212) 604-1379

AMERICAN BOARD OF ORTHOPAEDIC SURGEONS
FELLOW AMERICAN COLLEGE OF SURGEONS
* CERTIFIED ADDITIONAL QUALIFICATIONS
IN HAND SURGERY

April 20, 2001

Betty L. Atlas, Esq.
Bartlett, McDonough, Bastone
& Monaghan, LLP
81 Main Street
White Plains, NY 10601

    RE: Giladi v. Strauch
    BMBM File No.: 135-0037

Dear Ms. Atlas:

I have reviewed the above referenced case and specifically the following records referable to the plaintiff, Roni Giladi:

1. Records of Montefiore Medical Center/WHAECOM
2. Records of Dr. Berish Strauch
3. Records of Dr. Maurice Rousso and records supplied by Dr. Rousso and counsel for the plaintiff from Misgav Ladach Hospital
4. Records of the State Insurance Fund and Worker's Compensation inclusive of all medical reports contained therein
5. Records of St. Barnabas Hospital in New Jersey
6. Records of Dr. Daniel Herness
7. Records of Dr. Beasley
8. Records of Dr. Robert Goldstein and Madison Avenue Orthopaedics
9. Records of Hospital for Joint Diseases
10. Deposition testimony of plaintiff, Roni Giladi, Dr. Berish Strauch, Dr. Harris Sternman, Dr. Deborah Irizarry, Dr. Maurice Rousso
11. Report of Dr. Martin Posner
12. EMG reports from Montefiore Medical Center and Dr. Engel
13. Medical Certificates, correspondence and Complements by Dr. Maurice Rousso
14. Records of Dr. Fulco and Dr. Kulick

15. Records of Dr. Spinner
16. Records of Dr. Rosenblumm
17. Records of Dr. Goodrich
18. Plaintiff's Complaint
19. Records of Dr. Jerry Kaplan
20. Records of Dr. Helft
21. Records of Dr. Popescu
22. Records of Dr. B. Lester
23. Records of Dr. Bergen
24. Records of Dr. Decker
25. Records of Dr. Sultan

Based upon my review of these records, it is my opinion to a reasonable degree of medical certainty, that there were no deviations from good and accepted medical and surgical practice in the care and surgical and medical treatment of Roni Giladi by the defendants herein. There were no breaches in the standard of care by any of the defendants.

My opinions are based upon my review of these records as well as my personal knowledge and experience as an orthopedic surgeon and hand surgeon.

The records in this case reflect an appropriate surgical plan by Dr. Strauch prior to the performance of surgery in December 1991. Specifically, the records of Dr. Strauch reflect that decompression procedures and transposition of the ulnar nerve were planned. Secondary to intraoperative findings, that portion of the plan may or may not be accomplished. It is also good surgical practice to determine intraoperatively whether a transposition is appropriate and whether it is likely to remain transposed in its new fixed position. Dr. Strauch's notes and testimony also reflect that the risks, benefits and alternatives of the procedure were also discussed with the patient, in accordance with good surgical practice.

Notwithstanding the discrepancy in the surgical records with respect to whether a transposition was performed intraoperatively, this does not suggest or imply any deviation from good and accepted surgical technique.

It is both accepted and reasonable surgical practice to perform a neurolysis and decompression procedures at both the median and ulnar nerves, that is, at two different levels in a single surgical procedure. This was not excessive and was an appropriate surgical plan performed in a reasonable period of time.

In addition, both the preoperative and postoperative records in this case document that Mr. Giladi had bilateral disease on both upper extremities. This is supported by the preoperative EMG of March 8, 1991 as well as subsequent preoperative and postoperative studies. A transposition may very well have been performed and the nerve may have slipped back to its normal anatomic groove during the postoperative period.

Whether or not a transposition of the ulnar nerve was performed during the surgery performed by Dr. Strauch in December of 1991 does not impact on the surgical result and the patient's prognosis.

With respect to Dr. Rousso's contention that the anterior transposition was not done because the Ligament Testutt was in its anatomic location, there is no reference to the Ligament Testutt in either Dr. Rousso's operative report or in the pathology report from the surgery performed by Dr. Rousso. The appearance of this structure during the subsequent surgery by Dr. Rousso also has no bearing upon whether or not the ulnar nerve was transposed.

There is absolutely no indication in any of the records that I have reviewed to suggest injury to the ulnar nerve during the surgery performed by Dr. Strauch on December 12, 1991. The patient had good sensibility postoperatively, full passive range of motion and it was not until months later in April of 1992, that he complained of any type of pain at his elbow. Moreover, in my opinion, the patient improperly returned to work within days of surgery, against medical advice and in fact injured the left upper extremity at that time. The records referable to the patient clearly reflect that from the immediate postop period through 1993, the patient continued to lift heavy equipment and in fact suffered a second injury to his left upper extremity. This injury could have damaged the nerve causing a neuroma.

It is also my opinion, to a reasonable degree of medical certainty, that the records provided by Dr. Maurice Rousso and the Misgav Ladach Hospital in Jerusalem are deficient in that they fail to document any specific injury to the nerve, or the Ligament Testutt of which Dr. Rousso testified. The records fail to document that the Ligament Testutt was excised and sent to pathology.

Moreover, the records clearly reflect a delay by Mr. Giladi in returning for further surgery until 1994, even though it was recommended to him on an urgent basis as early as 1992. Had the patient been returned to surgery prior to April of 1994, his result might have been improved.

Injury to a nerve or the formation of a neuroma can be formed in may ways, including by compression, formation of postoperative adhesions, the actions of the patient.

It is my opinion to a reasonable degree of medical certainty that it was impossible for Dr. Rousso to intraoperatively isolate and definitively identify the functioning of isolated nerve fascicles of the level of his surgery. Accepting however, Dr. Rousso's conclusions that he found severed fascicles and a neuroma, it is my opinion that the likely cause of these conditions is a combination of the patient's healing process, adhesions and/or the improper and premature use and stress of or to the affected extremity following discharge in December 1991 in addition to trauma to the extremity immediately after surgery and during the next two years.

Premised upon my review of the records in this case, the plaintiff's prognosis is guarded due to the initial diagnoses and persistent subjective complaints not withstanding treatment within the standard of care by the defendants.

Annexed hereto is a copy of my curriculum vitae, inclusive of a list of my publications.

Very truly yours,

*Joel Grad, M.D.*

Joel Grad, M.D.

Enclosure